## COMMONWEALTH *vs.* ROBERT MARTINEZ.

Plymouth. February 7, 2002. - June 10, 2002.

Present: MARSHALL, C.J., GREANEY, COWIN, SOSMAN, & CORDY, JJ.

*Evidence,* State of mind, Polygraph test, Consciousness of guilt, Identification, Exculpatory, Failure to produce evidence, Hearsay. *Practice, Criminal,* Mistrial, Instructions to jury, Assistance of counsel, New trial, Discovery, Capital case. *Homicide. Constitutional Law,* Assistance of counsel.

A criminal defendant's offer to submit to a polygraph examination was not admissible as evidence of the defendant's consciousness of innocence. [88]

At a murder trial, the judge erred in admitting, as evidence of motive, testimony that the defendant was sexually frustrated the day before the murder, where such evidence was too remote to have any rational bearing on the defendant's state of mind when he killed the victim; however, the ruling was not prejudicial, in light of all the evidence presented at trial. [88-89]

At a murder trial, the judge did not abuse her discretion by giving a curative instruction, rather than ordering a mistrial, where there was an emotional but unanticipated outburst from the victim's sister as she was authenticating photographs taken at the crime scene depicting the victim's body. [89-90]

At a murder trial, the judge properly instructed the jury on consciousness of guilt [90], extreme atrocity or cruelty [90-91], identification [91], and the failure of the authorities to conduct tests or produce certain evidence [91-92].

A criminal defendant failed to demonstrate that his trial counsel had provided ineffective assistance by failing to obtain or use the criminal records of the prosecution's witnesses for impeachment purposes, where defense counsel subjected the witnesses to vigorous cross-examination that highlighted the witnesses' inconsistent statements, drug addiction, and withholding of evidence from the authorities. [92-93]

A criminal defendant failed to demonstrate that his trial counsel had provided ineffective assistance by failing to raise the issue of the authenticity of the defendant's signature on a Miranda waiver form, where defense counsel, at trial, did in fact raise the issue of the voluntariness of the defendant's statements to police. [94]

A Superior Court judge properly denied a criminal defendant's motion for a new trial, where the defendant's claims that the Commonwealth had violated its duty to provide the defense with exculpatory evidence in its possession [94-95], and had improperly withheld evidence of an inducement in exchange for a witness's testimony [95-96], were not supported by the record.

A Superior Court judge properly denied a criminal defendant's motion for a new trial, based on evidence that another person had allegedly admitted to the crime, where the alleged admission was both unreliable and inadmissible hearsay. [96-97]

A Superior Court judge properly concluded that a criminal defendant had failed to establish a sufficient basis to warrant additional postconviction discovery [97-98] and, where no substantial issue was raised by the defendant, properly denied the defendant's motion for a new trial without an evidentiary hearing [98].

INDICTMENT found and returned in the Superior Court Department on October 21, 1996.

The case was tried before *Barbara A. Dortch-Okara*, J., and a motion for a new trial, filed on September 20, 2000, was heard by *Charles J. Hely*, J.

*David H. Erickson* for the defendant.

*Bridget Norton Middleton*, Assistant District Attorney, for the Commonwealth.

MARSHALL, C.J. In March, 1998, Robert Martinez was convicted of murder in the first degree on a theory of extreme atrocity or cruelty. Represented by new counsel, the defendant filed a motion for a new trial, which was denied without an evidentiary hearing by a judge who was not the trial judge.

The defendant now appeals from the jury verdict and from the denial of his motion for a new trial. As to the conduct of the trial, he challenges two evidentiary rulings of the judge, argues that a mistrial was necessitated by an outburst from the victim's sister while she was testifying, and takes issue with various jury instructions. In addition, the defendant argues that trial counsel was ineffective in two respects: for failing to investigate and impeach witnesses with their criminal records, and for not attempting to suppress the defendant's statement to police. As to his motion for a new trial, he argues that the prosecutor improperly withheld certain information concerning the criminal histories and dealings with the Commonwealth of three of its witnesses. He also challenges the denial of the motion without an evidentiary hearing and the denial of his request for postconviction discovery, and claims that a new trial is warranted because of what he argues is newly discovered evidence that another person confessed to the murder. There being no basis for order-

ing a new trial or for granting the defendant relief under G. L. c. 278, § 33E, we affirm the judgment and the order denying the defendant's motion for a new trial.

1. *Facts.* Viewed in its light most favorable to the Commonwealth, the evidence is as follows. The victim lived with her infant child in a second-floor apartment on Warren Avenue in Brockton. The defendant lived with his family in the same building on the third floor. In the early hours of Sunday, August 8, 1993, the victim was repeatedly stabbed and killed while at home in her apartment.[1] She and her baby were not discovered until two and one-half days later. The child was alive, but had suffered first-degree burns from a wet diaper, dehydration, and possible pneumonia. The defendant was indicted three years later, in October, 1996.

The events preceding the murder were as follows. On Saturday, August 7, 1993, the defendant was at a gathering in the first-floor apartment drinking beer with several others, including Jose Camacho. The gathering broke up after midnight. Camacho left the building, but returned some time later looking for a place to sleep. As Camacho passed the victim's apartment on the second floor, he overheard the defendant say in an angry tone from inside the apartment, "[G]ive me what I want and I won't hurt you." He heard a female voice, and what sounded like a muffled scream. Frightened, Camacho left the building.

Maureen Rautenberg, a neighbor living across the street, testified that, at approximately 1 A.M. on August 8, she heard a woman screaming for five minutes. Looking out her window, Rautenberg saw lights in the victim's apartment, where someone was moving around. A man in a gray-hooded sweatshirt emerged from the building and walked to a nearby bridge carrying a small plastic bag. He returned to the building, and within minutes, the lights in the victim's apartment went out. The man left the building again, and returned some thirty minutes later with four other men, two of whom went with the gray-hooded man into the building. The light in the victim's apartment went on briefly, and the men then left. Rautenberg had earlier seen

---

[1]The victim was stabbed thirty-six times. Sixteen wounds penetrated her chest cavity, and four cut through to her ribs. There was expert testimony that she had been conscious and had suffered pain for several minutes.

the gray-hooded man sell drugs to her boy friend, Freddie Matias. Matias identified that man as the defendant.

Later that same Sunday, the defendant encountered Camacho, who saw that the defendant had a bloody knife. When asked for an explanation, the defendant responded that he "had slashed a bitch." There was evidence that the knife was of the size and shape that was capable of inflicting the victim's wounds.

In the course of the police investigation, the defendant hid from the police on multiple occasions, and provided them with a false name. On August 14, 1993, while the defendant was at the Brockton police department on another matter, he agreed to speak with a State trooper, and signed a form waiving his Miranda rights. He gave conflicting accounts of his whereabouts on August 7 and 8. He also admitted that he owned a knife, and said that he had either lost it, thrown it away, or left it at his mother's house. Before the interview ended, he provided hair and fiber samples to the police and allowed them to photograph him.[2] In 1996, the defendant was again interviewed by the State police. In the course of that interview, he was asked about the victim's baby, to which he responded: "I didn't hurt the baby," and then added, "I didn't hurt anyone."

The defendant made several inculpatory statements to others. Three to four hours after the body was discovered, he told his girl friend that they needed to pack their bags and leave for Puerto Rico because the police were "investigat[ing]" him. He asked her to hide him, and to tell the police that he was elsewhere. After hiding from the police on the night the body was discovered, he asked an acquaintance if the police thought he had "murdered the girl."

An informant who was incarcerated with the defendant testified that, in 1997, the defendant told him he had had a sexual relationship with the victim, and repeatedly described the victim as being sexually provocative. He told the informant that he had gone to the victim's apartment to collect money he was owed, and left when the victim said she did not have it. He returned later, he said, entered the unlocked apartment and found her

---

[2]Testimony at trial was to the effect that, of the several pubic hairs recovered from the crime scene, only one could not be matched to the victim, but it also could not be matched to the defendant.

dead body. Frightened, he claimed he left and came back with some friends to show them the victim's body.

2. *Evidentiary issues.* The defendant challenges two evidentiary rulings of the trial judge. Defense counsel objected to both rulings, and we review for prejudicial error. *Commonwealth* v. *Vinnie*, 428 Mass. 161, 163, cert. denied, 525 U.S. 1007 (1998). First, the judge excluded evidence that the defendant told police that he was willing to undergo a polygraph examination. The defendant sought to have the evidence admitted in order to show his state of mind, a consciousness of innocence.[3] The judge's ruling was correct. Because in this Commonwealth polygraph evidence is inadmissible for any purpose in a criminal trial, *Commonwealth* v. *Kent K.*, 427 Mass. 754, 763 (1998); *Commonwealth* v. *Mendes*, 406 Mass. 201, 212 (1989), a defendant's offer to submit to a polygraph examination as evidence of consciousness of innocence is not admissible. Such an offer is a self-serving act undertaken with no possibility of any risk. If the offer is accepted and the test given, the results cannot be used in evidence whether favorable or unfavorable. In these circumstances, the sincerity of the offer can easily be feigned, making any inference of innocence wholly unreliable. See *Ramaker* v. *State*, 345 Ark. 225, 234 (2001); *State* v. *Chang*, 46 Haw. 22, 33 (1962), overruled on other grounds by *State* v. *Okumura*, 78 Haw. 383, 408 (1995); *Commonwealth* v. *Saunders*, 386 Pa. 149, 156-157 (1956); *State* v. *Rowe*, 77 Wash. 2d 955, 958 (1970).

As to the second challenged evidentiary ruling, the prosecutor sought to establish that the motive for the murder was either "money or sex." The judge permitted the defendant's girl friend to testify that the day before the murder the defendant was sexually frustrated because of her unwillingness to bring him to orgasm. The judge noted that she did not think the evidence was "particularly prejudicial." The evidence should not have been admitted. The defendant's interrupted but consensual sexual relations with his girl friend the day before the murder

---

[3]We have noted that consciousness of innocence evidence is inherently of little value because of the numerous and complex reasons for which someone might act in a manner consistent with innocence. See *Commonwealth* v. *Oeun Lam*, 420 Mass. 615, 620 (1995).

was too remote to have any rational bearing on his state of mind when he killed the victim. Cf. *Commonwealth* v. *Scott*, 408 Mass. 811, 817-820 (1990) (evidence of three prior encounters with strangers admissible to prove sexual frustration as motive in murder of fourth stranger). The Commonwealth's argument that the evidence was necessary to clarify for the jury the meaning of the statement Camacho overheard the defendant making to the victim, "[G]ive me what I want and I won't hurt you," misses the point. There was evidence properly admitted that the defendant thought the victim sexually provocative. Whether the defendant killed the victim because he was angry that she had not repaid him the money he said was owed to him, or because she refused to engage in sexual intercourse with him, the jury had before them evidence that the defendant was in the apartment at the time of the critical events, and that the victim was refusing to provide him with something. Although the challenged evidence should not have been admitted, this ruling was nonprejudicial. We are confident, in light of all the evidence presented at trial, that the "judgment was not substantially swayed by the error." *Commonwealth* v. *Flebotte*, 417 Mass. 348, 353 (1994), quoting *Commonwealth* v. *Peruzzi*, 15 Mass. App. Ct. 437, 445 (1983).

3. *Witness outburst at trial.* While the victim's sister was testifying, the prosecutor asked her to authenticate photographs that had been taken at the crime scene depicting the victim's body. On seeing the photographs, the witness became emotional,[4] and the judge interrupted the trial. Defense counsel then stipulated to the authenticity of the photographs. The judge recalled the jury and immediately gave a forceful curative instruction. Defense counsel moved for a mistrial, which the judge denied. The defendant claims that, in light of the prosecutor's allegedly purposeful misconduct and the severity of the witness's outburst, the judge's denial of the motion for a mistrial was an abuse of discretion. See *Commonwealth* v. *Barnett*, 371 Mass. 87, 96 (1976), cert. denied, 429 U.S. 1049 (1977). We disagree.

Contrary to the defendant's suggestion, the outburst was not

---

[4]The transcript does not reflect the nature of the "outburst" from the witness.

anticipated by the prosecutor. The prosecutor informed the judge that the witness previously had assured him that she was prepared to authenticate the photographs when she testified. The judge, in the best position to determine likely prejudice, properly exercised her discretion to give a curative instruction rather than order a mistrial. Cf. *Commonwealth* v. *Santiago*, 425 Mass. 491, 496 (1997), *S.C.*, 427 Mass. 298, and 428 Mass. 39, cert. denied, 525 U.S. 1003 (1998) (no abuse of discretion in denying mistrial request after victim's sister yelled at defendant, "Murderer. You killed my sister"). We presume that the jury followed her instructions. See *Commonwealth* v. *Helfant*, 398 Mass. 214, 228-229 (1986). There was no abuse of discretion. See *Commonwealth* v. *Barnett, supra.*

4. *Jury instructions.* The defendant points to four jury instructions that he claims are erroneous. He also argues that the cumulative errors denied him a fair trial. Each challenge is baseless, as we shall explain. First, during her charge on consciousness of guilt, the judge mentioned several examples of such evidence, such as the defendant may have fled, hid, made intentionally false statements, used a false name, destroyed evidence, or intimidated a witness. There was evidence that the defendant had disposed of the murder weapon, and the defendant argues that the judge's instruction that "you may have heard evidence suggesting that the defendant may have intentionally tried to destroy evidence in this case," was a signal by the judge to the jury that the defendant "had committed these acts." The judge's instruction was proper. She correctly reminded the jurors that it was for them to decide whether they believed such evidence, whether it in fact reflected feelings of guilt by the defendant, and whether, in turn, the evidence indicated actual guilt. See, e.g., *Commonwealth* v. *Toney*, 385 Mass. 575, 584-585 & n.6 (1982) (evidence of flight).

Second, in her instructions on extreme atrocity or cruelty, the judge correctly listed the *Cunneen* factors for the jury to consider. *Commonwealth* v. *Cunneen*, 389 Mass. 216, 227-228 (1983). The defendant takes issue with her instruction that "you may consider whether the defendant had knowledge of any pain caused to the victim, however, the Commonwealth need not prove that the defendant knew that his conduct was extremely

atrocious or cruel." The instruction was correct. There is no requirement that the defendant know that his act is extremely atrocious or cruel.[5] *Commonwealth* v. *Golston*, 373 Mass. 249, 260 (1977), cert. denied, 434 U.S. 1039 (1978). "Once malice . . . [is] shown, we need look only to objective evidence of extreme atrocity or cruelty to support a conviction . . . ." *Commonwealth* v. *Breese*, 389 Mass. 540, 546 (1983), quoting *Commonwealth* v. *Monsen*, 377 Mass. 245, 254-255 (1979).

Third, the defendant challenges the judge's instructions on identification in two respects: that she should have adhered to the language contained in the appendix to *Commonwealth* v. *Rodriguez*, 378 Mass. 296, 310 (1979), concerning the use of all of the senses to identify a person,[6] and that she should have instructed that use of alcohol and drugs could affect the identification made by a witness. There was no error. It is not required that judges adhere to the literal text of the suggested instruction in *Commonwealth* v. *Rodriguez*, *supra*, particularly where, as here, there was no evidence that Rautenberg or Matias identified the defendant by any means other than sight. Camacho's testimony to the effect that he recognized the defendant's voice coming from the victim's apartment was self-explanatory, without the need for any specific instruction about a witness's use of "senses" other than sight. The judge was also not required to give a specific instruction that a witness's substance abuse may affect his or her identification of a person. Her instruction that the jury should "consider whether the witness has a capacity and opportunity to make a reliable observation on the matter covered by that testimony" was sufficient.

Finally, the defendant points to two alleged errors in connection with the judge's instruction regarding the failure of the authorities to conduct certain tests or produce certain evidence.

---

[5]The Model Jury Instructions on Homicide include in the instruction on extreme atrocity or cruelty: "The inquiry focuses on the defendant's action in terms of the manner and means of inflicting death, and on the resulting effect on the victim." Model Jury Instructions on Homicide 13 (1999).

[6]The defendant requested that the judge instruct: "In general, a witness bases any identification he makes on his perception through the use of his senses. Usually the witness identifies an offender by the sense of sight — but this is not necessarily so, and he may use other senses." *Commonwealth* v. *Rodriguez*, 378 Mass. 296, 310 (1979).

See *Commonwealth* v. *Bowden,* 379 Mass. 472, 486 (1980).[7] The defendant had asked the judge to include the word "investigation," which she did not do. There was no error. A judge need not give the particular instruction requested by a defendant or use a particular term, such as "investigation." The defendant also claims that the judge failed to inform the jury that there was a duty on the part of the Commonwealth to gather exculpatory information. The judge was not required to give such an instruction. The Commonwealth must, of course, disclose evidence in its custody or control that is favorable to the accused. See *Brady* v. *Maryland,* 373 U.S. 83, 87 (1963). A *Bowden* instruction is warranted because the "failure of the authorities to conduct certain tests is a permissible ground on which to build a defense." *Commonwealth* v. *Rivera,* 424 Mass. 266, 274 (1997), cert. denied, 525 U.S. 934 (1998). But the obligation of the authorities to investigate a crime does not translate into a jury instruction that the authorities have a duty to gather exculpatory evidence. The instruction was sufficient.

5. *Ineffective assistance of counsel.* The defendant alleges ineffective assistance of his trial counsel in two respects: that he failed (i) to investigate and use the criminal records of Camacho, Matias, and Rautenberg to impeach those witnesses, and (ii) to move to suppress the defendant's statement to the police on the basis of an allegedly forged signature. We consider whether error, if any, "was likely to have influenced the jury's conclusion." *Commonwealth* v. *Wright,* 411 Mass. 678, 682 (1992).

Defense counsel filed a motion to be provided with the criminal records of the Commonwealth's witnesses.[8] The Commonwealth argues, as the motion judge found, that there is

---

[7]The judge, over the Commonwealth's objection, instructed the jury: "[I]f you determine, after considering the evidence in this case, that certain tests that should have been conducted in this case were not conducted by the police, or certain police procedures that should have been followed were not followed, those failures could raise a reasonable doubt in your mind as to the defendant's guilt of this crime, but there is no duty on the Commonwealth to gather every piece of evidence that may be potentially exculpatory."

[8]The defendant requested that the "Criminal History Systems Board and/or the Commissioner of Probation be ordered to furnish him [defense counsel] with the criminal records of convictions of [the prosecution's anticipated] witnesses."

nothing to substantiate the defendant's present claim that defense counsel did not obtain the criminal records of Camacho, Matias, and Rautenberg, much less that he was unaware that any existed.[9] In any event, failure to introduce the criminal record of a witness for impeachment purposes generally does not constitute ineffective assistance of counsel. See *Commonwealth* v. *Moran*, 388 Mass. 655, 661 (1983). Defense counsel exposed Matias and Rautenberg as crack cocaine addicts, who were violating the law at the time of the murder. He elicited testimony that a criminal complaint had issued against Camacho charging him with breaking and entering and attempted larceny of a motor vehicle. Defense counsel subjected the Commonwealth's witnesses to vigorous cross-examination that highlighted for the jury their inconsistent statements,[10] drug addiction, and withholding of evidence from the authorities.[11] His cross-examinations were, as the motion judge noted, "skillful and thorough." A decision not to cross-examine these witnesses concerning any prior convictions was not "manifestly unreasonable." *Commonwealth* v. *Dahl*, 430 Mass. 813, 822 (2000).

---

[9]At least as to Camacho, the record suggests the opposite. Discovery provided to the defendant included police reports detailing one of Camacho's previous Brockton arrests. Defense counsel was also aware that a fellow inmate was going to testify that the defendant threatened Camacho while they were all in jail together. Matias had four convictions that appear to have been admissible for purposes of impeachment: two of assault and battery by means of a dangerous weapon, one of malicious destruction of property, and one of larceny of a motor vehicle. Although there was testimony of Rautenberg that she "owed some old fines," there is nothing in the record to indicate that she had a criminal record that could have been used to impeach her.

[10]Trial counsel brought out inconsistencies between Rautenberg's statement to the police in 1993, her grand jury testimony in 1996, and her trial testimony. She gave inconsistent accounts, for example, of the skin color of the man in the gray-hooded sweatshirt, his clothing at the time of the murder, and the status of the lights on the second and third floors of the victim's building. When confronted with police reports, Rautenberg claimed that the police either misinterpreted her statements or incorrectly memorialized them.

[11]Matias failed to tell police that he had purchased crack cocaine on the night of the murder. Despite several meetings with the police over three years, Camacho failed to tell them all he knew about the murder and he claimed this was because of threats against him by the defendant. Despite his alleged fear, trial counsel elicited that less than one year after the murder Camacho revealed inculpatory evidence against the defendant, including that the defendant had shown him a bloody knife.

As to the second claim, at trial the prosecutor moved to introduce the Miranda waiver form signed by the defendant. Defense counsel objected that the signature was not the defendant's. Defense counsel then showed it to the defendant, who responded that he did not remember signing the document. Appellate counsel argues, without any supporting evidence, that the signature "looks like a forgery," and that counsel was ineffective for failing to raise the "signature flaw" in a motion to suppress or a voir dire.

There is nothing beyond appellate counsel's own statement to support a claim of forgery. Moreover, defense counsel did in fact raise the issue of voluntariness. He moved for a voir dire when the Commonwealth sought to introduce the defendant's statement. The Commonwealth made an offer of proof, describing in detail the circumstances of the waiver of Miranda rights and the signing of the form. The judge found that the defendant had voluntarily waived his Miranda rights and had spoken voluntarily to the police. In light of these findings a motion to suppress would have been fruitless, and counsel cannot be found ineffective for failing to file such a motion. See *Commonwealth* v. *Conceicao*, 388 Mass. 255, 264 (1983). Trial counsel also used the statement to his client's advantage: he highlighted the defendant's cooperation with the police as evidence of innocence. See *Commonwealth* v. *Squailia*, 429 Mass. 101, 110-111 (1999) (failure to file motion to suppress was reasonable tactic as some statements supported defense strategy). The decision not to file a motion to suppress was not ineffective.

6. *Motion for a new trial.* The defendant challenges the denial of his motion for a new trial on several grounds. We consider separately the alleged errors at trial and the alleged errors at the motion for a new trial.

(a) *Trial issues.* In his motion for a new trial the defendant argued for the first time that the prosecutor engaged in misconduct by allegedly withholding evidence of the criminal records of Camacho, Rautenberg, and Matias, and evidence of Camacho's dealings with the Commonwealth regarding his criminal charges. Because the motion judge addressed the issue on its merits, we consider whether error, if any, prejudiced the defendant's trial. See *Commonwealth* v. *Hallet*, 427 Mass. 552,

554 (1998). See also *Commonwealth* v. *Vinnie*, 428 Mass. 161, 163 (1998).

As to all three witnesses, the defendant claims that the nondisclosure of their criminal records violated the Commonwealth's duty to provide the defense with exculpatory evidence in its possession. See *Brady* v. *Maryland*, 373 U.S. 83, 87 (1963); *Commonwealth* v. *Tucceri*, 412 Mass. 401, 404-405 (1992). The defendant did not request that the district attorney's office turn over the criminal records of these witnesses. Nor could the district attorney have done so, if he indeed possessed them. See G. L. c. 6, § 172. The proper route for the defendant to obtain prior convictions of prospective witnesses from the Commonwealth is by requesting the judge to order the probation department to produce them. See Mass. R. Crim. P. 14 (a) (2), 378 Mass. 874 (1979). Defense counsel made the appropriate motion. See note 8, *supra*. The defendant's claim that the prosecution withheld these documents is baseless.

Next, the defendant claims the prosecutor improperly withheld evidence of a claimed inducement from the Commonwealth to Camacho in exchange for his testimony. He suggests that Camacho materially changed his story immediately following an appearance in court on July 10, 1996, and received favorable treatment from the Commonwealth in connection with a separate complaint charging armed robbery for which he had pleaded to a lesser included offense six months before the defendant's trial. We note preliminarily that the defendant has not shown that trial counsel did not have the records from which the defendant now infers an undisclosed arrangement between Camacho and the Commonwealth. See note 9, *supra*. In any event the records, viewed in conjunction with the trial testimony, do not bear out the defendant's claim of prosecutorial misconduct.

The defendant says that, after Camacho's July, 1996, court appearance, Camacho changed his testimony to the effect that he heard the defendant inside the victim's apartment on the night of the murder, and that the defendant later told him that he had murdered the victim. In fact, however, as defense counsel established at trial, Camacho had already disclosed that informa-

tion to another person two months earlier.[12] The defendant has also not shown any relationship between Camacho's later plea to the lesser offense of larceny from a person and his testimony at the defendant's trial. Pointing to the Commonwealth's willingness to accept a plea to a lesser charge, the motion judge noted that there was nothing to suggest that this was "anything other than a routine charge concession in a District Court case." We agree with the motion judge that there was no evidence of any undisclosed promise or inducement for Camacho's testimony or that the outcome in any of his cases was a result of his testimony against the defendant.

(b) *Denial of motion for a new trial.* The defendant challenges the denial of his motion for a new trial in three regards: the judge (i) failed to grant a new trial on the basis of newly discovered evidence that another person admitted to the murder; (ii) failed to grant postconviction discovery; and (iii) failed to hold an evidentiary hearing in connection with the motion. Each of these decisions is committed to the sound discretion of the motion judge. See *Commonwealth* v. *Grace*, 397 Mass. 303, 306-307 (1986) (newly discovered evidence); *Commonwealth* v. *Dalton*, 385 Mass. 190, 194 (1982) (posttrial discovery); *Commonwealth* v. *Stewart*, 383 Mass. 253, 257 (1981) (evidentiary hearing). The judge did not abuse his discretion.

The claimed newly discovered evidence is to the effect that Rui Monteiro, the boy friend of the victim at the time of the murder, had "confessed" to the killing. An informant of the Federal Bureau of Investigation and State police told police two months after the trial that a man known as "Rui" admitted to the killing to the informant's brother-in-law, Antonio Nogueira, while the two were in Cape Verde. The informant said that Nogueira told her that "Rui" said that he had stabbed a girl thirty-six times and left a baby on top of her, adding that Nogueira had made a tape recording of the conversation.

The alleged admission is both unreliable and inadmissible hearsay. The police contacted Nogueira in Cape Verde. He denied having or recording a conversation about any crime

---

[12]The Commonwealth also points out that the court records on which the defendant relies do not establish that Camacho was in fact present in court on July 10, 1996, much less that there was any interchange that day between Camacho and the Commonwealth that influenced Camacho's later trial testimony.

involving Rui Monteiro, whom he knew from the United States. Nogueira told the police that he knew nothing about the killing of a female in Massachusetts, and denied telling the informant about a murder "confession." State police determined that the tape recording of the alleged confession delivered by the informant contained no discussion of a murder. Rui Monteiro's passport indicates he was not in Cape Verde at the time of the alleged confession. The motion judge found that the informant information was "of doubtful reliability," and "casts no real doubt on the justice of the defendant's conviction." *Commonwealth* v. *Grace, supra* at 305. We agree.

Moreover, Rui's alleged confession is inadmissible hearsay. Even if his out-of-court statement were sufficiently corroborated to qualify under the penal interest exception, see *Commonwealth* v. *Drew*, 397 Mass. 65, 75-76 (1986), the declarations of Nogueira and the informant themselves are hearsay, for which the defendant has identified no exception that would permit admitting such evidence. The motion judge properly exercised his discretion to deny a new trial on the basis of the proffered evidence of the alleged confession.

As to the defendant's request for postconviction discovery, Mass. R. Crim. P. 30 (c) (4), 378 Mass. 900 (1979), requires that the defendant by affidavit "establish a prima facie case for relief" before a "judge . . . may authorize such [postconviction] discovery as is deemed appropriate." The motion judge concluded that the defendant had failed to show "a sufficient basis to warrant additional postconviction discovery beyond the extensive discovery regarding Rui Monteiro that has already been voluntarily supplied . . . by the District Attorney."[13] We see nothing to disturb his determination that postconviction

---

[13] The defendant requested:

(1) The production of the probation reports of all Commonwealth witnesses and that defense counsel be provided with their respective dates of birth.

(2) The production of the names, birthdays and social security numbers, and addresses of all alibi witnesses of Rui Monteiro, including but not limited to the names of the members of his band.

(3) The production of any police reports dealing with the investigation of the killing of the victim and cases involving Jose Camacho and Rui Monteiro.

(4) The production of any and all information relative to welfare checks.

(5) The production of all information that might corroborate the "confes-

discovery was unwarranted; the defendant's requests could throw little if any light on the reliability of the informant's statements.

As to a hearing, a judge may, in his or her discretion, decide a motion for a new trial without an evidentiary hearing where "no substantial issue is raised by the motion or affidavits." Mass. R. Crim. P. 30 (c) (3), 378 Mass. 900 (1979). See *Commonwealth* v. *Stewart, supra* at 257. In determining whether a hearing under rule 30 was warranted, we look "not only at the seriousness of the issue asserted, but also to the adequacy of the defendant's showing on the issue raised." *Id.* at 257-258. The defendant raised no substantial issue on his motion for a new trial. An evidentiary hearing was not required.

7. *General Laws c. 278, § 33E.* We have reviewed the record. There is no reason to exercise our power under G. L. c. 278, § 33E, to order a new trial or to reduce the verdict.

*Judgment affirmed.*

*Order denying motion for a new trial affirmed.*

---

sion" of Rui Monteiro, including but not limited to any rape investigation in which he was a suspect.