NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-11709

COMMONWEALTH  vs.  BRYANT WARE.


Hampden.     December 4, 2014. - April 8, 2015.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk, & Hines, JJ.



Supreme Judicial Court, Superintendence of inferior courts. Controlled Substances.  Practice, Criminal, Plea, Conduct of government agents, Discovery, Disclosure of evidence. Evidence, Guilty plea, Certificate of drug analysis, Exculpatory, Disclosure of evidence.  Constitutional Law, Plea, Conduct of government agents.  Due Process of Law, Plea, Disclosure of evidence.



Indictments found and returned in the Superior Court Department on August 29, 2007; November 25, 2009; and March 9, 2010.

A motion for leave to conduct postconviction discovery and for funds, filed on February 14, 2014, was considered by C. Jeffrey Kinder, J.

The Supreme Judicial Court granted an application for direct appellate review.


James P. McKenna for the defendant.
Katherine A. Robertson, Assistant District Attorney, for the Commonwealth.

SPINA, J. In this case, we consider whether a Superior Court judge abused his discretion in denying a motion for leave to conduct postconviction discovery and for funds, filed by the defendant, Bryant Ware. The defendant sought retesting of drug evidence maintained by the Springfield police department in countless cases brought by the Commonwealth between July, 2004, and January 18, 2013. During that time period, Sonja Farak was a chemist at the Department of Public Health's State Laboratory Institute in Amherst (Amherst drug lab). Also during that time period, the defendant was indicted on drug charges in three separate cases. His motion for postconviction discovery was predicated on the fact that Farak pleaded guilty on January 6, 2014, to four counts of tampering with evidence, G. L. c. 268, § 13E; four counts of theft of a controlled substance (cocaine) from a dispensary, G. L. c. 94C, § 37; and two counts of unlawful possession of a class B substance (cocaine), G. L. c. 94C, § 34. In denying the motion, the judge concluded that the defendant had failed to establish a prima facie case for relief under Mass. R. Crim. P. 30 (c) (4), as appearing in 435 Mass. 1501 (2001). We conclude that the judge did not abuse his discretion, and affirm his order. At the same time, based on what we learn from the record in this case about Farak's misconduct at the Amherst drug lab and the Commonwealth's failure to investigate the scope and timing of such misconduct,

we further conclude that the defendant is entitled to retest the controlled substance that gave rise to his 2009 indictment charging distribution of cocaine as a subsequent offense.

1. Background on the Amherst drug lab.[1]  The Amherst drug lab began operation in 1987 with the primary function of analyzing suspected controlled substances for law enforcement agencies involved in the prosecution of criminal cases in western Massachusetts.[2]  As of January, 2013, there were four

---

[1] In the fall of 2013, the judge in the present case also conducted an evidentiary hearing on postconviction motions filed by fifteen defendants who claimed that alleged criminal conduct by Sonja Farak rendered their guilty pleas to various drug charges unknowing, unintelligent, and involuntary, and that this newly discovered evidence cast doubt on the justice of their convictions.  The evidence presented at the hearing was limited to (1) the timing and scope of Farak's alleged criminal conduct; (2) the timing and scope of conduct underlying negative findings in an October, 2012, quality assurance audit of the Department of Public Health's State Laboratory Institute in Amherst (Amherst drug lab) by the State police; and (3) the extent to which Farak's alleged criminal conduct and the audit findings might relate to the testing of drug evidence in the fifteen defendants' cases.  Although Bryant Ware was not one of these defendants, his record appendix in the present appeal includes the memoranda of decision and orders issued by the judge in six of those cases.  The judge's description of events at the Amherst drug lab is fundamentally the same in each decision and forms the basis for our recitation of the background on that facility.  The judge issued each memorandum of decision and order in the fall of 2013, several months before he issued his order in the present case on March 12, 2014.  Neither the Commonwealth nor the defendant has challenged the essential facts regarding events that transpired at the Amherst drug lab concerning Farak.

[2] On July 1, 2012, the responsibility for oversight of the Amherst drug lab was transferred from the Department of Public Health to the State police.

employees at the facility, and each one could access the evidence safe by means of an electronic card or a key. On January 17, 2013, the evidence officer at the Amherst drug lab, Sharon Salem, was attempting to match certificates of drug analysis (drug certificates) with the corresponding samples when she realized that she was missing the samples in two cases. Records reflected that Farak had completed testing on those samples earlier in the month and had confirmed that the substances were cocaine. On January 18, Salem reported the missing evidence to her supervisor, James Hanchett, who searched Farak's work station and discovered, among other items, a manila envelope containing the packaging for the two missing samples, which had been cut open. Testing of the substances in the packaging was negative for cocaine, contrary to Farak's earlier analysis.

Hanchett immediately contacted the State police, who shut down the Amherst drug lab and began an investigation. They discovered two additional case envelopes in a temporary storage locker used by Farak, a location where evidence was not allowed to be stored overnight. Although each envelope was supposed to contain suspected cocaine, neither did, and a search for those substances was unsuccessful. Investigators also interviewed Farak's colleagues who said that, beginning in September, 2012, they observed a change in Farak's behavior, including frequent

unexplained absences from her work station and a decrease in productivity.

On January 19, 2013, the State police forensic services conducted an inventory of all drug evidence at the Amherst drug lab. Only the four above-described samples were missing. A similar inventory conducted approximately four months earlier had not uncovered any missing samples. Also on January 19, the State police searched Farak's vehicle pursuant to a warrant and seized, among other items, manila envelopes bearing case numbers, paperwork relating to the Amherst drug lab, a plastic bag containing a white powdery substance and a brown tar-like substance, a plastic bag containing assorted pills, and photocopies of three newspaper articles about individuals who had been investigated, charged, or sentenced for the illegal possession or theft of controlled substances.[3] Attached to one

---

[3] One of the newspaper articles, dated March 29, 2011, had been printed from a computer on September 20, 2011, and was a story about the illegal possession of steroids by law enforcement officers. A second newspaper article, dated October 25, 2011, had been printed from a computer on October 28, 2011, and was a story about a Pittsfield pharmacist being sentenced to three years in prison for stealing OxyContin from her workplace. The article mentioned that the pharmacist had replaced the OxyContin with other medications. A third newspaper article, dated December 2, 2011, had been printed from a computer on December 6, 2011, and was a story about a former San Francisco police department drug laboratory technician who stole cocaine from her workplace. These articles have not been included in the record in the present case. See note 1, supra.

of the articles was a handwritten note stating, "Thank [G]od I'm not a law enforcement <u>officer</u>" (emphasis in original).

Farak was arrested at her home that same day. She was charged by criminal complaint in the District Court with unlawful possession of a class A substance (heroin), unlawful possession of a class B substance (cocaine), and two counts of tampering with evidence. On January 25, 2013, the State police searched a tote bag that had been seized from Farak's work station pursuant to a warrant. The bag contained a variety of substances that could be used to dilute or replace cocaine (soap, baking soda, soy candle flakes, and oven-baked clay), other items commonly used in the drug trade (plastic laboratory dishes, waxed paper, and fragments of copper wire), and several evidence bags that had been cut open. The evidence bags bore diverse dates from December 16, 2012, to January 6, 2013.

On April 1, 2013, a State grand jury indicted Farak on four counts of tampering with evidence at the Amherst drug lab, four counts of stealing cocaine from that facility, and two counts of unlawful possession of cocaine. While proceedings were ongoing in the Superior Court with respect to these charges, four additional cases surfaced in which it seemed, based on retesting, that Farak may have removed cocaine from samples that were submitted to the Amherst drug lab for analysis between June 15, 2012, and October 10, 2012, and replaced at least some of

the cocaine with a counterfeit substance.  It is not clear from the record why this particular evidence was selected for retesting.  Nonetheless, it does appear that no charges were brought against Farak with respect to these four additional cases.  On January 6, 2014, Farak pleaded guilty to all ten charges.[4]

2.  Factual and procedural history.  In the present case, on August 29, 2007, a Hampden County grand jury indicted the defendant for possession of a class B controlled substance (cocaine) with intent to distribute (count one), possession of a Class D controlled substance (count two), violation of the controlled substances laws in proximity to a school or park (count three), possession of a firearm without a firearm identification card (count four), and conspiracy to violate the

---

[4] With respect to the first count of tampering with evidence (Count I), Farak was sentenced to two and one-half years in a house of correction, with eighteen months to be served, and the balance suspended with probation for five years, with special conditions.  Farak was given the same sentence on the second and third counts of tampering with evidence, as well as on three counts of theft of a controlled substance, each sentence to run concurrently with the sentence on Count I.  With respect to each of the two counts of unlawful possession of a class B substance, Farak was sentenced to serve one year in a house of correction, each sentence to run concurrently with the sentence on Count I. With respect to the fourth count of tampering with evidence and the fourth count of theft of a controlled substance, Farak was sentenced to five years' probation, to run concurrently with her probation on the other charges.

drug laws (count five) (collectively, 2007 charges).[5]  On May 21,
2008, the defendant pleaded guilty to counts one, two, and four.[6]

On November 25, 2009, a Hampden County grand jury indicted
the defendant for distribution of a class B controlled substance
(cocaine) as a subsequent offense (2009 charge).  The indictment
arose from an incident on July 31, 2009, when the defendant
purportedly sold two pieces of an off-white rock-like substance,
later determined to be "crack" cocaine, to an undercover State
trooper for twenty dollars.  The defendant also was charged with
violating the terms of his probation, which had been imposed
when he pleaded guilty to the 2007 charges.

Then, on March 9, 2010, a Hampden County grand jury
indicted the defendant for possession of a class A controlled
substance (heroin) with intent to distribute as a subsequent
offense (count one), violation of the controlled substances laws
in proximity to a school or park (count two), five counts of
assault and battery by means of a dangerous weapon (a vehicle)

---

[5] The defendant has not claimed that Farak was the analyst
who tested the substances that served as the bases for his
indictments on the 2007 charges.

[6] The Superior Court docket states that the defendant
pleaded not guilty to counts three and five of the indictments,
but it does not indicate the ultimate disposition of those
charges.  With respect to count one, the defendant was sentenced
to two and one-half years in a house of correction, with one
year to serve, and the balance suspended with probation for two
years.  With respect to counts two and four, he was sentenced to
six months in a house of correction, to be served concurrently
with the committed sentence on count one.

(counts three through seven), and resisting arrest (count eight) (collectively, 2010 charges). The indictments arose from an incident on December 22, 2009, when Springfield police officers attempted to stop the defendant's vehicle and execute an arrest warrant, the defendant rammed his vehicle into three police cruisers while fleeing the scene, the officers eventually stopped and searched the vehicle, they discovered therein eight bags of a substance that subsequently was determined to be heroin, and the defendant resisted efforts to place him under arrest.[7] On February 4, 2011, the defendant pleaded guilty to count one and counts three through eight of the 2010 charges, he pleaded guilty to the 2009 charge,[8] and he pleaded guilty to the probation violation.[9]

---

[7] The defendant has not claimed that Farak was the analyst who tested the substances that were seized from his vehicle on December 22, 2009, and that served as the bases for the 2010 charges.

[8] According to an affidavit signed by the defendant on November 18, 2013, he understood that if this case had gone to trial, the Commonwealth would have offered a certificate of drug analysis signed by Farak, indicating that the substance sold to the undercover State trooper was cocaine. Consequently, the defendant tendered his guilty plea in material part because of his understanding of the likelihood of success of the Commonwealth's case.

[9] With respect to the 2009 charge, the defendant was sentenced to from five to seven years in the State prison. With respect to count one of the 2010 charges, he was sentenced to from five to seven years in the State prison, to run concurrently with his sentence on the 2009 charge. The Commonwealth filed a nolle prosequi with respect to count two of the 2010 charges. With respect to count three of the 2010

On August 12, 2013, the defendant filed a motion for a new trial with respect to the 2009 charge. Six months later, on February 14, 2014, he filed a motion pursuant to Mass. R. Crim. P. 30 (c) (4) for leave to conduct postconviction discovery and for funds, with respect to all three cases that had been brought against him.[10] The defendant sought retesting of drug evidence maintained by the Springfield police department that related to cases brought by the Commonwealth between July, 2004, and January 18, 2013.[11] He claimed that, given the lack of

---

charges, the defendant was sentenced to eighteen months' probation, to be served from and after his sentence on count one. With respect to counts four through eight of the 2010 charges, he was sentenced to eighteen months' probation, to be served concurrently with his sentence of probation on count three. As to the probation violation, the defendant was committed to a house of correction to serve the eighteen-month suspended portion of his sentence on the 2007 charges, to run concurrently with his State prison sentence on the 2009 charge.

[10] Rule 30 (c) (4) of the Massachusetts Rules of Criminal Procedure, as appearing in 435 Mass. 1501 (2001), provides:

> "Discovery. Where affidavits filed by the moving party under subdivision (c)(3) establish a prima facie case for relief, the judge on motion of any party, after notice to the opposing party and an opportunity to be heard, may authorize such discovery as is deemed appropriate, subject to appropriate protective order."

[11] In a memorandum of law in support of his motion to conduct postconviction discovery, the defendant proposed that all drug samples produced from July, 2004, through January 18, 2013, be visually inspected to see whether it readily could be determined that they contained two distinct substances. The defendant also proposed that one hundred randomly selected samples from 2004, and two hundred randomly selected samples from each succeeding year, be retested to determine whether evidence of tampering could be identified. It was the

investigation by the Commonwealth, there was no reason to believe that the full extent of Farak's criminal conduct had been identified. In the defendant's view, the eight cases in which Farak had compromised the integrity of the Commonwealth's evidence were the proverbial tip of the iceberg. In his motion, the defendant asserted that the requested postconviction discovery was "reasonably likely to uncover evidence that might warrant granting a new trial." The Commonwealth opposed the motion.

On March 12, 2014, the defendant's motion for leave to conduct postconviction discovery was denied. The judge concluded that the defendant had failed to establish a prima facie case for relief under Mass. R. Crim. P. 30 (c) (4). He stated that there was no evidence that the drug analyses in the defendant's cases were inaccurate, or that Farak had been involved in any misconduct at the time the defendant pleaded guilty on February 4, 2011. Moreover, the judge continued, separate and apart from the timing of Farak's misconduct, there were good reasons for the defendant to have accepted the plea agreement, including a more favorable sentencing disposition than would have been available after a trial. The judge

---

defendant's understanding that in light of the Springfield police department's procedures for the disposal of drug evidence, the evidence that the defendant sought to have retested had not yet been destroyed.

determined that, given the strength of the Commonwealth's cases, the significant benefit the defendant received from the plea agreement, and the absence of evidence that Farak's misconduct affected the drug analyses in the defendant's cases, her misconduct would not have been material to his decision to plead guilty. The defendant appealed from the order denying his motion for postconviction discovery, and we granted his application for direct appellate review.

3. Discussion. The defendant contends that he has made a prima facie showing that his motion for postconviction discovery is reasonably likely to uncover evidence that might warrant granting him a new trial. He emphasizes that the focus of his motion is to determine precisely when Farak began to engage in misconduct at the Amherst drug lab and, consequently, when she first compromised the Commonwealth's evidence in drug cases. The defendant asserts that, although common sense would suggest that Farak was tampering with evidence well before the summer of 2012, the Commonwealth has failed to conduct more than a brief, cursory investigation into the matter. That being the case, the retesting of drug samples would, in the defendant's view, establish the time frame of Farak's wrongdoing, potentially furnishing the defendant with evidence to support his motion for a new trial. Given the likelihood of uncovering such important evidence, the defendant argues that the judge abused his

discretion in denying the defendant's motion for postconviction discovery.  We disagree.

As a preliminary matter, we point out that, generally speaking, "discovery orders are interlocutory and not appealable."  Cronin v. Strayer, 392 Mass. 525, 528 (1984).  See Brum v. Dartmouth, 428 Mass. 684, 687 (1999) (in most cases, interlocutory rulings "are not appealable until the ultimate disposition of the case because they are not 'final orders'"); Maddocks v. Ricker, 403 Mass. 592, 597 (1988) (no right of appeal from interlocutory order unless authorized by statute or rule); Borman v. Borman, 378 Mass. 775, 779 (1979).  In the ordinary course, an established route for a defendant to "obtain appellate review of the denial of his motion for postconviction discovery would be in connection with an appeal from the denial of his motion for a new trial, if the new trial motion is in fact denied."  Donald v. Commonwealth, 437 Mass. 1007, 1007 (2002).  See Commonwealth v. Stewart, 383 Mass. 253, 261 (1981) (reviewing postconviction discovery issue on appeal from denial of motion for new trial).

The circumstances in the present case, however, necessitate an exception to the established route for obtaining appellate review of an order denying postconviction discovery.  General Laws c. 211, § 3, provides that "[t]he supreme judicial court shall have general superintendence of all courts of inferior

jurisdiction to correct and prevent errors and abuses therein if no other remedy is expressly provided."  This court's superintendence powers are discretionary, are exercised only in exceptional circumstances, and are not intended to circumvent the regular appellate process.  See Planned Parenthood League of Mass., Inc. v. Operation Rescue, 406 Mass. 701, 706 (1990); Costarelli v. Commonwealth, 374 Mass. 677, 679 (1978).  In the past, we have exercised our general superintendence powers to resolve, among other things, "important issues with implications for the effective administration of justice" and "matter[s] of public interest that may cause further uncertainty within the courts."  First Justice of the Bristol Div. of the Juvenile Court Dep't v. Clerk-Magistrate of the Bristol Div. of the Juvenile Court Dep't, 438 Mass. 387, 391 (2003) (resolving internal dispute between members of judicial department).  See Commonwealth v. Charles, 466 Mass. 63, 88-89 (2013) (allegations of misconduct by chemist at William A. Hinton State Laboratory Institute in Jamaica Plain, and implications of such misconduct on defendants convicted of drug offenses, warranted court's exercise of superintendence powers to review certain procedures adopted by trial court to handle postconviction matters).

Here, it is undisputed that Farak pleaded guilty to numerous criminal charges that arose from her work as a chemist at the Amherst drug lab.  Her misconduct has raised significant

concerns about the administration of justice in criminal cases where a defendant was convicted of a drug offense and she was the analyst. Given the very limited nature of the State police investigation into Farak's activities at the drug lab, the precise time frame and scope of her misconduct are unknown.[12] Nonetheless, Farak's criminal behavior, and the potential implications of such behavior on defendants who have been convicted of drug offenses based on evidence that she analyzed, present exceptional circumstances warranting this court's immediate attention. In accordance with our general superintendence powers under G. L. c. 211, § 3, we proceed to review the judge's order denying the defendant's motion for leave to conduct postconviction discovery.

"The purpose of postconviction discovery is to allow a defendant to gather evidence to support 'an apparently meritorious claim . . . [where] the evidence that can be adduced to support the claim is unknown to the court.'" Commonwealth v. Daniels, 445 Mass. 392, 406 (2005), quoting 4 ABA Standards for Criminal Justice, Postconviction Remedies Commentary to Standard 22-4.5, at 22-48 (2d ed. 1986). When requesting such discovery, a defendant by affidavit "must make a sufficient showing that the discovery is reasonably likely to uncover evidence that

---

[12] As far as we can tell, Farak has not provided any details concerning the timing and scope of her misconduct, apart from pleading guilty to the ten indictments.

might warrant granting a new trial." Daniels, supra at 407. See Commonwealth v. Morgan, 453 Mass. 54, 61-62 (2009); Commonwealth v. Martinez, 437 Mass. 84, 97 (2002). See also Reporters' Notes to Rule 30, Mass. Ann. Laws, Rules of Criminal Procedure, at 1710 (LexisNexis 2014-2015) ("Discovery is appropriate where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he or she is entitled to relief"). A defendant cannot use a motion for postconviction discovery to engage in a "fishing expedition." See generally E.B. Cypher, Criminal Practice and Procedure § 42:30 (4th ed. 2014). A trial judge has broad discretion in deciding whether a defendant has established a prima facie case for relief such that a postconviction discovery motion should be allowed. See Commonwealth v. Lynch, 439 Mass. 532, 545, cert. denied, 540 U.S. 1059 (2003); Martinez, supra at 97-98.

In this case, given the breadth of the defendant's motion for leave to conduct postconviction discovery, we conclude that the judge did not abuse his discretion in denying the motion. The defendant made no showing that his wide-ranging request for the visual inspection of thousands of drug samples analyzed by Farak between July, 2004, and January 18, 2013, as well as for the retesting of approximately 1,700 of those samples, would be reasonably likely to uncover tainted evidence. See note 11,

supra.  Nothing has been presented to suggest that Farak engaged in misconduct at the Amherst drug lab prior to perhaps the fall of 2011, at the earliest, when the newspaper articles seized from her vehicle were printed from a computer,[13] see note 3, supra, or that the drug analyses she performed before that time were inaccurate or subsequently altered.

That said, the precise timing and scope of Farak's wrongdoing are unclear.  When personnel at the Amherst drug lab notified the State police in January, 2013, that Farak may have compromised the evidence in two drug cases, the Commonwealth had a duty to conduct a thorough investigation to determine the nature and extent of her misconduct, and its effect both on pending cases and on cases in which defendants already had been convicted of crimes involving controlled substances that Farak had analyzed.  It is well established that the Commonwealth has a duty to learn of and disclose to a defendant any exculpatory evidence that is "held by agents of the prosecution team."

---

[13] In Commonwealth v. Cotto, post   ,   n.13 (2015), we note that the motion judge in that case "was not persuaded that it was reasonable to infer from Farak's possession of the newspaper articles that were printed in the fall of 2011 . . . that she was stealing controlled substances at that time."  We conclude there that "the judge did not abuse his discretion in making this determination." Id.  Here, the motion judge did not make any findings regarding the significance of the newspaper articles, presumably because they were not part of the record in this case.  See note 3, supra.  Generally speaking, absent a specific finding to the contrary, the newspaper articles could serve as a basis for concluding that Farak engaged in misconduct at the Amherst drug lab earlier than the summer of 2012.

Commonwealth v. Beal, 429 Mass. 530, 532 (1999). See Commonwealth v. Scott, 467 Mass. 336, 349 (2014); Commonwealth v. Lykus, 451 Mass. 310, 327 (2008). Such agents include not only prosecutors and police, but also chemists working in State drug laboratories who analyze purported drug samples and report their findings to the prosecutor's office. See Scott, supra. See also Commonwealth v. Martin, 427 Mass. 816, 823-824 (1998) (prosecution had duty to inquire about existence of scientific tests conducted by Commonwealth's own police crime laboratory and to produce exculpatory evidence sought by defendant). In Commonwealth v. Tucceri, 412 Mass. 401, 402-403 (1992), a case where the Commonwealth failed to disclose exculpatory evidence that was in its possession but was never specifically requested by the defendant, we acknowledged that these disclosure requirements "are inconsistent with the traditional adversary role of litigants." Id. at 408. However, in concluding that the nondisclosure of the evidence required the ordering of a new trial, we stated that "the duties of a prosecutor to administer justice fairly, and particularly concerning requested or obviously exculpatory evidence, go beyond winning convictions." Id. See Mass. R. Prof. C. 3.8 (d), 426 Mass. 1397 (1998) ("The prosecutor in a criminal case shall . . . make timely disclosure to the defense of all evidence or information known to the

prosecutor that tends to negate the guilt of the accused or mitigates the offense . . .").

As far as can be gleaned from the record, the Commonwealth never conducted a thorough investigation of the Amherst drug lab. The State police spent a few days looking for missing evidence, searching Farak's vehicle, interviewing her colleagues, conducting an inventory of the facility, and searching a tote bag that had been seized from Farak's work station. The inquiry appeared to end there, until it came to light several months later that Farak might have tampered with evidence in four more cases. Drug samples were retested in those additional cases, and the results indicated that at least some of the cocaine had been replaced with a counterfeit substance. It is apparent that the Commonwealth clearly had information suggesting that Farak had engaged in misconduct at the Amherst drug lab, but the magnitude and implications of the problem have not been ascertained.[14]

The judge did not abuse his discretion in denying the defendant's motion as it was presented, given its wide-ranging sweep. Nonetheless, based on what is known about Farak's misconduct and on the failure of the Commonwealth to pursue a

---

[14] Given that the matter of Farak's misconduct at the Amherst drug lab involves defendants in multiple counties, the State police detective unit of the Attorney General's office might be best suited to lead an investigation.

thorough investigation into the matter, we conclude that the defendant should be afforded an opportunity to conduct postconviction discovery relating to the 2009 charge, the only one in which the Commonwealth would have offered a drug certificate signed by Farak, indicating that the substance allegedly sold to an undercover State trooper was cocaine. See notes 5, 7, & 8, supra. See also Commonwealth v. Cotto, post , (2015) (describing procedure for retesting drug samples not yet destroyed). The defendant may file a new motion for postconviction discovery and for funds, pertaining specifically to that case. Such discovery may include, among other things, visual inspection and retesting of the controlled substance at issue, and funds may be allocated as appropriate.

4. Conclusion. The judge's denial of the defendant's motion for postconviction discovery and for funds is affirmed. This case is remanded to the Superior Court for further proceedings consistent with this opinion.

So ordered.