NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-12430

COMMONWEALTH  vs.  JUSTINO ESCOBAR.

April 18, 2018.

Controlled Substances.  Constitutional Law, Plea, Conduct of government agents.  Due Process of Law, Plea, Disclosure of evidence.  Supreme Judicial Court, Superintendence of inferior courts.  Practice, Criminal, Plea, Conduct of government agents, Disclosure of evidence, New trial.  Evidence, Certificate of drug analysis, Disclosure of evidence.

The defendant, Justino Escobar, pleaded guilty to cocaine trafficking in 2009 and was sentenced to a term of from eight to twelve years in State prison.  In July, 2015, he filed a motion for a new trial and a related motion to conduct postconviction discovery, seeking to have his conviction vacated pursuant to Commonwealth v. Ware, 471 Mass. 85 (2015), and Commonwealth v. Scott, 467 Mass. 336 (2014).  In his motions, Escobar argued that the Commonwealth had not fully investigated misconduct at the William A. Hinton State Laboratory Institute (Hinton drug lab).[1]  In his view, the Inspector General's investigation of the

_____

[1] The now well-known saga surrounding the Hinton drug lab stemmed from the egregious misconduct of former laboratory employee Annie Dookhan.  See, e.g., Bridgeman v. District Attorney for the Suffolk Dist., 476 Mass. 298, 300 (2017) (setting forth protocol to address legacy of Dookhan's misconduct and to protect rights of affected defendants).  Although the samples in Escobar's case were analyzed at the Hinton drug lab, in December, 2008, they were not analyzed by Dookhan.  Escobar, therefore, is not among the thousands of defendants whose cases have thus far been affected by or

Hinton lab was incomplete because it did not inquire into whether any chemist other than Annie Dookhan had acted improperly.[2]

Escobar subsequently filed a motion to vacate his conviction and for the dismissal of the underlying charge as well as a motion for a so-called "Cotto order" pursuant to this court's decision in Commonwealth v. Cotto, 471 Mass. 97 (2015). After a hearing, in July, 2017, a judge in the Superior Court denied without prejudice the motions to vacate and for a Cotto order; allowed in part the motion for postconviction discovery, ordering limited discovery; and declined to rule on the motion for a new trial pending completion of that limited discovery.[3] Escobar appealed. We allowed his application for direct appellate review, and affirm.

On the basis of the record that was before her, the judge's rulings were correct. As she noted, Escobar's core argument is that the chemist who analyzed the samples in his case, Della Saunders, had "testing productivity numbers" comparable to those of Dookhan. In Escobar's view, this raises the question whether Saunders, like Dookhan, also engaged in misconduct. In light of his arguments, the judge determined that some limited postconviction discovery was warranted, and she thus allowed, in

---

benefited from the protocol set forth to address Dookhan's misconduct.

[2] Escobar's argument stems, at least in part, from the fact that Sonja Farak was employed at the Hinton drug lab before she was employed at the Department of Public Health's State Laboratory Institute in Amherst (Amherst drug lab). As is now known, Farak engaged in her own egregious misconduct while working at the Amherst drug lab. See, e.g., Commonwealth v. Cotto, 471 Mass. 97, 98 (2015). In Escobar's view, the fact that there has been no investigation into Farak's conduct while she worked at the Hinton drug lab suggests that, overall, the investigation into the Hinton drug lab was not sufficiently thorough.

[3] The length of time that passed between when Escobar first filed his motion for a new trial and when the Superior Court judge acted on that and the subsequent motions appears to have resulted from the Commonwealth's initial delay in responding to the motions as well as from a stay imposed by the Superior Court, in June, 2016, pending this court's decision in Bridgeman, supra.

part, Escobar's motion on this point.[4]  She also concluded, reasonably, that she could not fairly rule on Escobar's motion for a new trial until that limited discovery was complete.

The judge's denials of Escobar's other motions were equally reasonable, and, importantly, were without prejudice.  Escobar premised his motion to vacate on the purported "misconduct" of the Inspector General for failing to fully investigate the goings-on at the Hinton drug lab.  In denying the motion, the judge stated that she found no support for Escobar's position on the record before her and "at this time."  She thus left the door open for Escobar to raise the issue again after the postconviction discovery that she had authorized was complete.  Similarly, the judge's denial of Escobar's motion for a Cotto order turned on the fact that not only was Escobar's request too broad, but that whether any kind of order might be warranted would depend on whether Escobar's motion for a new trial ultimately has any merit.[5]

In his appeal to this court, Escobar asks us to rule definitively on the substantive merits of his position -- that is, that the Commonwealth has a duty to investigate the Hinton drug lab and has committed a breach of that duty.  We decline to

_____

[4] The judge ordered the Commonwealth to produce certain information pertaining to Della Saunders, including nonprivileged portions of her personnel file; notes related to interviews of Saunders conducted from 2002 to present related to investigations of the Hinton or Amherst drug labs; a list of the court cases in which Saunders testified as the "certifying" chemist from 2005 to 2008; and available data on the numbers and types of drug tests that Saunders performed at the Hinton drug lab from 2005 to 2008.

[5] In any event, as to Escobar's motion for a Cotto order, the judge had no authority to issue the type of order that Escobar sought.  In the Cotto case, we exercised our general superintendence power "'to fashion a workable approach' for giving defendants whose evidence samples were analyzed by Farak at the Amherst drug lab an opportunity to discover whether, in fact, their cases were affected by her misconduct."  Cotto, 471 Mass. at 114 (2015), quoting Commonwealth v. Scott, 467 Mass. 336, 352 (2014).  We indicated that "a thorough and timely investigation would be the appropriate course to follow" and also addressed the alternative, should the Commonwealth decline to undertake such an investigation.  Id. at 115.  The judge here had no such authority.

do so.  Escobar is in a position, in the trial court, to conduct the postconviction discovery that has been authorized and then to proceed, on the basis of whatever he may learn, with his motion for a new trial.  In the course of those proceedings, the substantive issues that he raises can be fully addressed and the record fully developed.  Our consideration of the case in its current posture, beyond what we have done here, would make little sense where there still remains much to be considered in the first instance in the trial court, and where that consideration will result in a more fully developed record for purposes of an appeal.[6]

The orders of the Superior Court on Escobar's motions to vacate his conviction and dismiss the underlying charge; for a Cotto order; for postconviction discovery; and for a new trial are therefore affirmed.  Nothing in our decision today prevents either party from appealing any subsequent rulings of the trial court once the underlying proceedings are complete.

So ordered.

James P. McKenna for the defendant.
Vincent J. DeMore, Assistant District Attorney, for the Commonwealth.
Julia Bell Andrus, Special Assistant Attorney General, for Office of the Inspector General, amicus curiae, submitted a brief.
Christopher K. Post, Committee for Public Counsel Services, & Luke Ryan, for Robert White & another, amici curiae, submitted a brief.

_____

[6] Although we decline to rule, at this time, on the issue whether the Inspector General failed to fulfil a duty or to thoroughly investigate the Hinton drug lab, we note that nothing in the current record suggests to us that the investigation was inadequate.