NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

15-P-413                                           Appeals Court

COMMONWEALTH  vs.  BRIAN SMITH.

No. 15-P-413.

Suffolk.     June 9, 2016. - September 15, 2016.

Present:  Carhart, Maldonado, & Henry, JJ.


Practice, Criminal, New trial, Disclosure of
     evidence.  Privileged Communication.  Evidence, Privileged
     communication, Motive, Disclosure of evidence.  Attorney at
     Law, Attorney-client relationship.  Cooperation with
     Government Agents.



     Indictments found and returned in the Superior Court
Department on May 3, 2005.

     A motion for a new trial, filed on February 21, 2012, was
considered by Janet L. Sanders, J.


     Michelle Menken for the defendant.
     Zachary Hillman, Assistant District Attorney, for the
Commonwealth.


     CARHART, J.  The defendant appeals from the denial of his

motion for a new trial without an evidentiary hearing.  Because

we conclude that the defendant has raised several substantial

issues, we remand the case to the Superior Court for an evidentiary hearing.

Background. 1. The trial. On August 18, 2006, the defendant was convicted by a Suffolk County Superior Court jury of armed home invasion, armed assault with intent to murder, and unlawful possession of a firearm (the Suffolk County case). His convictions were affirmed on appeal. Commonwealth v. Smith, 75 Mass. App. Ct. 196 (2009) (Smith I), S.C., 458 Mass. 1012 (2010). We summarize the facts underlying the convictions, which are set forth in full in Smith I.

On the evening of March 13, 2005, Kenneth Lowe and his girlfriend Niki Semnack were in Lowe's apartment in the Charlestown section of Boston, where Lowe had spent much of the evening ingesting "crack" cocaine. Around 11:30 P.M., Lowe heard a knock at the door and saw the defendant through the peephole. Lowe and the defendant had been friends for about eight months, and they usually smoked crack cocaine together. Lowe opened the door, and the defendant told him that a friend was downstairs and wanted Lowe to "take him up the street."[1] Lowe declined, and, at that point, a white man wearing a

---

[1] "Although Lowe was not in the business as a crack cocaine supplier, he would routinely acquire the drug for other people, including the defendant, in exchange for a share of the drugs. When the defendant visited Lowe for crack cocaine he would frequently bring other people with him and Lowe was happy to act as a runner for their crack purchases as well." Id. at 197.

"hoodie" with a bandana covering his face ran up the stairs holding a large silver gun.  Smith I, supra at 197.

> "Lowe immediately tried to close the door, but the defendant placed his foot in the doorway, leaving a two- to three-inch gap.  Lowe observed the masked man reach over the defendant and insert the gun into the apartment through the gap in the door.  The masked man either said, 'You mother f[-]cker' or, 'get the mother f[-]cker.'  The defendant mumbled something and then both he and the masked man pushed on the door to open it.  Lowe was able to keep the door from opening further.
>
> "The masked man then pulled the gun out of the door crack and as he did so, the gun went off, but the shot did not enter the apartment.  Lowe tried to slam the door shut, but was unable to close it because the security chain was caught between the door and the frame.  Lowe then heard the defendant say, 'what the f[-]ck you doing man.'  He heard them have a brief discussion and then they started pushing on the door again.  As Lowe started to tire, they managed to open the door enough to insert the gun between the door and the frame.  The gunman was trying to angle the gun towards Lowe's head."  Id. at 197-198.

The gun fired again and the bullet hit a picture on the wall.  Lowe managed to close and lock the door.  He heard two people leave the building then he called the police.  Id. at 198.

2.  Posttrial discovery.  One week earlier, according to the Suffolk County district attorney's office (Suffolk district attorney), Lowe had witnessed the homicide of his and the defendant's mutual friend.  The Suffolk district attorney believed that the defendant "wanted to kill Lowe as a direct result of Lowe's capacity as a witness to th[at] homicide."  The Suffolk district attorney agreed not to prosecute Lowe in

connection with three drug transactions he had facilitated between February and March, 2005, in exchange for Lowe's testimony in that murder case, which testimony helped the Suffolk district attorney obtain an indictment against someone other than the defendant.

About one week after the home invasion, Lowe agreed to help Massachusetts State police officers investigating drug dealing in Charlestown. In or around May 6, 2005, while the defendant was being held on the Suffolk County case, a State police lieutenant shared with the prosecutor in that case "credible information that [the defendant] was planning on posting the 100k [$100,000] bail . . . and then getting out and murdering Kenny Lowe." By this time Lowe already had been "sent out of state for safety concerns." On May 26, 2005, a Boston police detective applied for a warrant to search the defendant's residence for evidence relating to a 1991 homicide, based upon information he had received from Lowe in April, 2005, and Lowe "received promises of protection at the time as a package deal for his help . . ."

Meanwhile, the State police and the Norfolk County district attorney's office (Norfolk district attorney) were investigating the defendant's involvement in an October 21, 2004, armored car robbery and shooting. On November 15, 2005, Lowe returned to the Commonwealth and testified before a Norfolk County grand

jury about the defendant's actions following the robbery. Indictments issued charging the defendant with armed robbery, assault with intent to murder, assault and battery by means of a dangerous weapon, larceny of a motor vehicle, various firearm offenses, and being an accessory before the fact (the Norfolk County case).

3. New trial motion. On February 21, 2012, the defendant filed a motion for a new trial arguing that, in violation of Brady v. Maryland, 373 U.S. 83 (1963), the Commonwealth had failed to disclose before trial that Semnack was poised to testify in a murder trial the day after the home invasion, that Lowe was cooperating with, and receiving benefits from, the Commonwealth in connection other cases involving the defendant, and that the State police were recording the defendant's telephone calls from jail. The defendant alleged that the courtroom was closed in violation of his right to a public trial, and that new evidence regarding Lowe's drug use on the night of the incident casts serious doubt on Lowe's credibility. Following discovery and a nonevidentiary hearing, a judge other than the trial judge made written findings and denied the motion on the papers.

Discussion. A judge may grant a new trial "at any time if it appears that justice may not have been done." Mass.R.Crim.P. 30(b), as appearing in 435 Mass. 1501 (2001). "The judge may

decide the motion on the basis of affidavits without further hearing, 'if no substantial issue is raised by the motion or affidavits.'" Commonwealth v. Stewart, 383 Mass. 253, 257 (1981), quoting from Mass.R.Crim.P. 30(c)(3), 378 Mass. 901 (1979).  Deciding whether to grant a new trial, or "whether to decide the motion on the basis of affidavits or to hear oral testimony, is left largely to the sound discretion of the judge[,]" ibid., whose decision "will not be reversed unless it is manifestly unjust or infected with prejudicial constitutional error." Commonwealth v. Grant, 440 Mass. 1001, 1002 (2010).

"In determining whether a 'substantial issue' meriting an evidentiary hearing . . . has been raised, we look not only at the seriousness of the issue asserted, but also to the adequacy of the defendant's showing . . ." Stewart, supra at 257-258. Here, the defendant submitted documents reflecting Lowe's heavy involvement with the Commonwealth as a witness against the defendant, the transcript of Semnack's testimony in the unrelated trial, an affidavit from Stephen Reznikow (an inmate who contradicts Lowe's testimony), and copies of recordings made and listened to by the State police of the defendant's conversations while in jail.  The judge found these materials insufficient to raise a substantial issue regarding the Commonwealth's compliance with its discovery obligations, Lowe's credibility and violations of the defendant's attorney-client

privilege.  We will address the issues separately, beginning with the one we find most troubling.

1.  <u>Monitored telephone calls</u>.  On October 25, 2004, Attorney Charles Rankin sent letters to the Norfolk district attorney and the State police stating that he represented the defendant in connection with the Norfolk County case.  Attorney Rankin previously had represented the defendant in a Federal case, as well.  See <u>United States</u> v. <u>Smith</u>, 101 F.3d 202 (1st Cir. 1996).  In 2010, the Norfolk district attorney provided successor defense counsel in the Norfolk County case with copies of telephone calls made by the defendant and recorded by the State police while the defendant was being held in the Suffolk County case.  In a call recorded on May 3, 2005, the defendant and Attorney Rankin discussed the Suffolk County case.  The defendant describes the events surrounding the home invasion, along with what turned out to be his defense at trial.  The defendant never spoke to the police or gave a statement regarding the Suffolk County case, and he did not testify at trial.

The motion judge found that the recording did not raise a substantial issue with respect to the defendant's Sixth Amendment rights because Attorney Rankin did not represent him in the Suffolk County or Norfolk County cases and "there is no evidence that these recordings were known to any Suffolk County

prosecutor" at the time of trial. While it is true that Rankin did not represent the defendant in June, 2007, when he was arraigned in the Norfolk County case, there is no dispute that he had represented the defendant in October, 2004, and the record shows that he continued to represent the defendant in May, 2005.[2] See Commonwealth v. Grace, 397 Mass. 303, 307 (1986) ("we regard ourselves in as good a position as the motion judge to assess the trial record" when she did not preside at the trial). Where, as here, the defendant has exercised his right to remain silent and to hold the Commonwealth to its burden of proof, he "has 'a right to keep secret' from others" his theory of defense at trial. Matter of a Grand Jury Investigation, 437 Mass. 340, 351 (2002), quoting from Matter of a John Doe Grand Jury Investigation, 408 Mass. 482 (1990). The communication was privileged. See Hatton v. Robinson, 31 Pick. 416, 421 (1833) (the attorney-client privilege "extends to all communications made to an attorney or counsellor, duly qualified and authorized as such, and applied to by the party in that capacity, with a view to obtain his advice and opinion in matters of law, in relation to his legal rights, duties and obligations"). The prospect of the Commonwealth having pretrial access to it

---

[2] Records show that Attorney Rankin visited the defendant in jail in March, 2005, and that the defendant called Rankin's office several times between March, 2005, and June, 2005.

"touches on the core of the right to counsel."[3] Commonwealth

v. Fontaine, 402 Mass. 491, 496 (1988).

Although the judge found no evidence that the recordings

were known to the Suffolk district attorney at the time of

trial, there is evidence that, within days of recording the

privileged communication, the State police shared with the

Suffolk district attorney, who was prosecuting the defendant,

information it likely had gleaned from the defendant's telephone

calls. The trial prosecutor documented the State police telling

him about a threat to Lowe, but he did not state, and no

affidavit addresses, whether the State police shared any other

information with him. There is no evidence that the prosecutor

did or did not inquire further after the lieutenant was somewhat

vague about the source of his information, but if the State

police also relayed the substance of the May 3, 2005,

conversation, then the Commonwealth had "an improper

advantage." Id. at 497. The Suffolk district attorney did not

offer an affidavit or any other evidence in support of its

argument that there had not been "irremediable prejudice to the

---

[3] Absent an evidentiary hearing we do not know whether or when the State police listened to this conversation, but there is no question that the State police should have stopped listening as soon as it realized that it had recorded a conversation between the defendant and his attorney. At oral argument, neither party was able to explain to us how a conversation between the defendant and his attorney was recorded.

defendant," ibid., and absent a hearing, as the motion judge aptly noted, we "don't know who did [the recording] and what they d[id] with the information."

"In our view, the judge was too quick in finding" that the defendant had not raised a substantial issue regarding the recorded conversation.  Commonwealth v. Delacruz, 61 Mass. App. Ct. 445, 450 (2004).  We agree with the defendant that he is "entitled to an evidentiary hearing where we get to the bottom of how in the world these officers were listening to what are obviously attorney-client phone calls," and whether they shared privileged information with the Suffolk district attorney.

2.  Brady claims.  Sometime after trial, the defendant discovered that Semnack was scheduled to appear as a witness for the Suffolk district attorney in an unrelated homicide trial on the day after the home invasion.  The defendant argues that he could have used this evidence, had it been disclosed before trial, to argue that Semnack was the target of the assault.  The motion judge found that the evidence was not relevant because motive did not play a part in the Commonwealth's case; therefore, "the identity of the potential target of the attack -- whether it was Lowe or Semnack -- was irrelevant."

We think that this analysis is flawed, because it does not matter that motive was not a part of the Commonwealth's case. "Although the Commonwealth is not required to prove that a

defendant had a motive for committing a crime, if there is evidence of motive, that evidence is admissible" and should be available to both sides.[4]  Commonwealth v. Borodine, 371 Mass. 1, 8 (1976), cert. denied, 429 U.S. 1049 (1976).  If the Commonwealth failed to disclose Semnack's witness status, then the defendant was deprived of the ability to present evidence in support of his claim that he was only there to buy drugs. Evidence of a motive to harm Semnack could have "round[ed] out the jury's picture of [the] case and shed[] light on other evidence" offered by the defendant to show that the gunman acted alone, Sidney Binder, Inc. v. Jewelers Mut. Ins. Co., 28 Mass. App. Ct. 459, 462 (1990), and, "[i]f evidence 'provides some significant aid to the defendant's case, whether it furnishes corroboration of the defendant's story, calls into question a material, although not indispensable, element of the prosecution's version of the events, or challenges the credibility of a key prosecution witness,' that evidence should reach the defendant's hand before trial, if at all possible."  Commonwealth v. Daniels, 445 Mass. 392, 401-402 (2005), quoting from Commonwealth v. Ellison, 376 Mass. 1, 22

---

[4] Indeed, if the Commonwealth believed that Lowe was targeted because he was a witness to a homicide, then it should have disclosed evidence which could support a similar motive to attack Semnack.

(1978). On remand, the defendant should be allowed to explore this theory and whether the information was disclosed.[5]

For the same reasons, the defendant is entitled to probe the Suffolk district attorney's knowledge of and alleged failure to disclose information regarding promises, rewards, and inducements given to Lowe in exchange for his cooperation in other cases involving the defendant. Lowe denied at trial that he was promised or provided with anything in exchange for his testimony in the Suffolk County case other than relocation assistance, travel reimbursement, and compensation for lost work. Yet, postconviction discovery reveals that (1) Lowe was promised police protection "as a package deal" for helping the Boston police and the Suffolk district attorney in unrelated cases involving the defendant, (2) the Suffolk district attorney was paying one-half of the cost of Lowe's housing after the home invasion, and (3) Lowe was not prosecuted by the Suffolk district attorney for facilitating three drug transactions in exchange for his testimony regarding the murder of his and the defendant's mutual friend. The defendant argues that Lowe also may have received assistance from the Norfolk district attorney and the Federal Bureau of Investigation.

---

[5] Trial counsel's affidavit in support of the motion for a new trial does not address any of the discovery issues raised by the defendant.

Although "a prosecutor has no duty to investigate every possible source of exculpatory information on behalf of the defendant[] and . . . his obligation to disclose exculpatory information is limited to that in the possession of the prosecutor or police," Commonwealth v. Campbell, 378 Mass. 680, 702 (1979), it is clear from the record that the Norfolk district attorney, the Suffolk district attorney, and the State police were communicating with each other regarding Lowe and his involvement in their various investigations.  Any information on other benefits conferred upon Lowe by these or other entities should have been disclosed.  See Commonwealth v. St. Germain, 381 Mass. 256, 261 n.8 (1980) (citations omitted) (noting that "[t]he police are also part of the prosecution" and that "[t]he prosecuting attorney's obligations . . . extend to material and information in the possession or control of members of his staff and of any others who have participated in the investigation or evaluation of the case and who either regularly report or with reference to the particular case or have reported to his office").  The existence and extent of such benefits can only be determined through an evidentiary hearing, after which the judge will have to determine whether access to this information would have made a difference in the defendant's trial.[6]

---

[6] The judge may decide that information regarding Lowe's cooperation in other cases would not have been helpful to the

3. <u>Newly discovered evidence</u>. After the defendant was convicted, an inmate at the Old Colony Correction Center named Steven Reznikow signed an affidavit to the effect that he was inside Lowe's apartment when the armed home invasion occurred and that he and Lowe had been smoking crack cocaine within minutes of the attack. This information contradicts Lowe's testimony at trial, that he last used cocaine hours before. The judge found Reznikow's affidavit to be neither material nor credible, "not only because of the affiant's criminal history but also because of his motive to lie in order to help another individual jailed at the same institution." She concluded that there was no risk that the jury would have reached a different conclusion had Reznikow testified at trial, because defense counsel effectively cross-examined Lowe about his cocaine use.

We think the judge abused her discretion in discrediting Reznikow's affidavit simply because he is in jail and has a criminal record. Absent other stated reasons, that finding alone does not support the denial of an evidentiary hearing. Although it may very well be that his allegations are not

---

defendant, because it would have revealed to the jury that he was under investigation for an armored car robbery and several homicides. While the defendant argues that the timing of Lowe's involvement in these investigations is crucial to demonstrating his bias against the defendant, the judge could conclude that it is even stronger evidence that the defendant had a motive to harm Lowe.

credible,[7] where, as here, the credibility of the affiant cannot be gleaned solely from the contents of the affidavit, it is only through the crucible of direct and cross-examination that such a judgment can be made.

4. <u>Court room closure</u>. The defendant alleges in his affidavit that his mother was excluded from the court room during jury selection. Trial counsel could not recall if a closure occurred, and the mother did not submit an affidavit. The defendant's trial began on August 14, 2006, and on April 12, 2007, the United States Court of Appeals for the First Circuit decided in <u>Owens</u> v. <u>United States</u>, 483 F.3d 48, 63 (1st Cir. 2007), that the right to a public trial extends to jury empanelment. Although trial counsel also had represented Owens in his Federal court trial, prior to reading the court's decision in that case, he would have not objected at the

---

[7] Reznikow's affidavit does not identify a date but states generally that he was at Lowe's house "[o]n a day in the spring of 2005." Another inmate named John Campbell submitted an affidavit stating that, based on his conversation with Reznikow regarding a shooting at Lowe's apartment, he "concluded that this was the incident in which [the defendant] had been charged with home invasion." Campbell does not state his relationship to the defendant other than that he later was incarcerated with him, so we do not know how Campbell recognized Reznikow's account as being consistent with the home invasion for which the defendant had not yet been convicted. The record shows that the defendant's residence is a two-family dwelling shared by the Smith and Campbell families, and that Campbell is the maiden name of the defendant's mother. What relation, if any, John Campbell has to the defendant or his family may be the subject of inquiry at an evidentiary hearing.

defendant's trial had he known that the defendant's mother was excluded.  The motion judge did not address the defendant's claim of structural error, which was not raised in the defendant's direct appeal and is waived.  See Commonwealth v. Randolph, 438 Mass. 290, 293 (2002).  On this record, we see no error that created substantial risk of a miscarriage of justice.  See id. at 294.

Conclusion.  So much of the order denying the defendant's motion for a new trial on the basis that the court room was closed in violation of the Sixth Amendment is affirmed.  The defendant, having made a sufficient showing, is entitled to an evidentiary hearing on the remaining claims.  Therefore, the balance of the order is vacated and the case is remanded to the Superior Court for an evidentiary hearing on the remaining claims.

So ordered.