MCFARLANE, COMMONWEALTH vs., 102 Mass. App. Ct. 264

 
 COMMONWEALTH vs. DENZEL MCFARLANE.

102 Mass. App. Ct. 264
 September 9, 2022 - February 2, 2023

Court Below: District Court, Springfield Division
Present: Vuono, Wolohojian, & Kinder, JJ. [Note 1]

 

No. 21-P-1028.

Firearms. Motor Vehicle, Firearms. Constitutional Law, Admissions and confessions, Voluntariness of statement. Due Process of Law, Disclosure of evidence. Evidence, Admissions and confessions, Voluntariness of statement, Disclosure of evidence, Exculpatory. Witness, Police officer, Impeachment, Credibility. Jury and Jurors. Police Officer. Waiver. District Attorney. Practice, Criminal, Admissions and confessions, Voluntariness of statement, Jury and jurors, Argument by prosecutor, New trial, Disclosure of evidence, District attorney, Waiver.

At the trial of a criminal complaint charging unlawful possession of a firearm, unlawful possession of ammunition, and improper storage of a firearm, arising from the discovery of a loaded firearm in a vehicle that the defendant had purchased shortly before he was approached by the police for various motor vehicle infractions, no substantial risk of a miscarriage of justice arose from the admission of a statement made by the defendant while he was sitting in the back seat of a police cruiser to the effect that the firearm belonged to him and not to his passenger, who was the mother of their child in the rear seat, and whom the defendant had seen handcuffed, where the record provided an adequate basis for concluding that the defendant's statement was voluntary, in that the judge specifically found that there had been no nefarious intent on the part of the police officers, there was nothing in the record to support a conclusion that the officers intentionally handcuffed the passenger in the view of the defendant, and the jury were given a humane practice instruction. [267-269]

There was no merit to the claim of a criminal defendant that the trial judge's excuse for cause, upon a finding of hardship, of a prospective juror who was an African-American woman deprived the defendant, who was Black, of his right to be tried by a jury representing a fair cross-section of the community (i.e., the juror was one of the few Black persons in the venire) and constituted an abuse of discretion, in that nothing in the record supported the defendant's assertions. [269-270]

At a criminal trial, no prejudice arose from the erroneous admission of evidence that the defendant had driven without a license, where, given that the defendant had testified on direct examination that he did not have a valid 

 Page 265 

license on the day he was arrested, the prior bad act evidence solicited by the prosecutor on cross-examination was merely cumulative of the evidence presented by the defense. [270-271]

At a criminal trial, no substantial risk of a miscarriage of justice arose from the prosecutor's remarks during closing argument vouching for the truthfulness of the police officers who testified at trial, where the judge gave a prompt and forceful instruction to the jury to disregard the improper argument. [271-272]

This court concluded that the nondisclosure of a Federal lawsuit against a police officer who testified at the criminal defendant's trial, and as a result of which lawsuit the officer was found liable for false arrest and false imprisonment by a jury less than two weeks after the criminal trial, did not warrant a new trial, where the defendant failed to show that there was a substantial risk that the jury would have reached a different conclusion had the evidence been admitted, in that, although the evidence was exculpatory, and although it would have been reasonable for the prosecutor to ask his police witnesses for information (known or not known to the public) about any pending or proven allegation of misconduct, the officer's testimony was consistent with and essentially duplicated the testimony provided by the other police officer witness at trial. [272-277]

Complaint received and sworn to in the Springfield Division of the District Court Department on July 10, 2017. 

 The case was tried before Robert S. Murphy, Jr., J., and a motion for a new trial was heard by him.

 Laurence J. Cohen for the defendant.

 William T. Joyce, Assistant District Attorney, for the Commonwealth.

 VUONO, J. Following a jury trial in the District Court, the defendant was convicted of unlawful possession of a firearm, unlawful possession of ammunition, and improper storage of a firearm. The charges stemmed from the discovery of a loaded firearm in a vehicle that the defendant had purchased shortly before he was approached by the police for various motor vehicle infractions. [Note 2] This is a consolidated appeal from the convictions and from the denial of the defendant's motion for a new trial. We affirm.

 1. The defendant's direct appeal. a. Background. During the afternoon of July 7, 2017, Springfield police officers Brian Phillips [Note 3] and Daniel Moynahan were on patrol when they approached a black Infiniti G37 after an inquiry revealed that the vehicle's 

 Page 266 

license plate was registered to a different automobile and that the registration had been revoked for lack of insurance. The defendant, who had been driving the car, had pulled over and was outside of the car checking the front bumper area when Officer Phillips approached him. The defendant's former girlfriend, Chandi Jones, was sitting in the front passenger seat, and their baby daughter was in the back seat. [Note 4] Phillips asked the defendant for his license, which he did not have, and then brought him to the rear of the car for additional questioning.

 As the two walked past the open driver's side door, Phillips saw the handle of a firearm tucked between the driver's seat and the center console. After the defendant admitted that he did not have a license to carry a firearm, he was handcuffed and placed in the cruiser. At the same time, Officer Moynahan ordered Jones out of the car and handcuffed her. Upon seeing Jones outside of the vehicle, the defendant yelled, "It's mine, not hers. Let her go." One of the two officers then called for assistance, and a detective unit arrived to photograph the firearm, after which Moynahan removed the gun from the car and secured it. The firearm was loaded with nine rounds of ammunition.

 Eventually, Jones was permitted to leave with the children, and the defendant was transported to the police station for booking. The Commonwealth introduced a videotape recording of the booking procedure during which the defendant said (incorrectly) that he believed the firearm contained four bullets. The firearm was test-fired by a State trooper assigned to the firearms identification unit, who certified that the firearm and ammunition were fully functional.

 The defendant testified at trial and disclaimed any knowledge of the firearm. He asserted that he had purchased the car from an individual named Gregory Owens and was attempting to fix the car's splash guard when he saw the police cruiser approach. He also provided a different version of the events that transpired after the police stopped him. According to the defendant, Phillips "grabbed" him and placed him in the cruiser before asking any questions. Phillips then returned to the cruiser with a firearm and showed it to the defendant. The defendant claimed that he told 

 Page 267 

Phillips he knew nothing about a gun and that he had just purchased the car on Eastern Avenue, about three blocks away. The defendant also testified that he did not see Jones in handcuffs and denied that he made any inculpatory statements about the firearm at the scene. Although the defendant acknowledged that he said there were four bullets in the firearm when he was being booked, he explained that he was simply repeating what Moynahan had told him during a conversation in the police cruiser. Jones and a friend, whom the defendant described as his "boss," testified for the defense and corroborated the defendant's testimony that he had just bought the car. In addition, Jones testified that that she did not see a gun in the car.

 b. Motion to suppress. Prior to trial, the defendant filed two motions to suppress. First, the defendant sought to suppress the statement he made during the booking procedure regarding the number of bullets in the gun. That motion was denied, and the defendant does not challenge the ruling on appeal. In a second motion, the defendant sought to suppress the statement attributed to him while he was sitting in the back seat of the cruiser to the effect that the firearm belonged to him and not Jones, on the ground, among others, that the statement was obtained in violation of Miranda v. Arizona, 384 U.S. 436 (1966), and art. 12 of the Massachusetts Declaration of Rights. [Note 5]

 After an evidentiary hearing, at which one witness, Phillips, testified, the motion was denied by the same judge who presided at trial. [Note 6] The judge found that the defendant was in custody at the time he made the statement at issue and had not been advised of his Miranda rights. However, because the statement was not the product of interrogation or its functional equivalent, the judge concluded that the statement was admissible. In reaching his conclusion, the judge rejected the defendant's argument that, despite the absence of direct questioning by the police, "the scene that was unfolding before his eyes was orchestrated by the police to elicit a response, and, therefore, was the functional equivalent of 

 Page 268 

interrogation." The judge found "no nefarious intent attributable to the officers in handcuffing [Jones] or doing so in an area where the defendant might see such activity."

 Relying on Commonwealth v. Monroe, 472 Mass. 461 (2015), the defendant now claims that even if his statement was not the product of an unlawful interrogation, the statement was nonetheless involuntary. More specifically, he claims that the totality of the circumstances, namely seeing Jones handcuffed while knowing their young child was in the car and knowing the child could be left unattended or worse without a parent, were psychologically coercive and, as a result, his will was overborne, rendering his statement involuntary.

 The Commonwealth is correct that the defendant has waived this issue because he did not raise it in his motion to suppress, see Mass. R. Crim. P. 13 (a) (2), as appearing in 442 Mass. 1516 (2004), or at the hearing on the defendant's motion to suppress. [Note 7] We further observe, as the Commonwealth also notes in its brief, that the defendant did not object when the statement was first admitted at trial. Both Phillips and Moynahan testified to what the defendant said when Jones was handcuffed. The defendant objected only to Moynahan's testimony, which came later in the trial. We therefore review the defendant's claim to determine whether the alleged error created a substantial risk of miscarriage of justice. See Commonwealth v. Santos, 95 Mass. App. Ct. 791, 795 (2019). We discern no error, and therefore there was no risk that justice miscarried.

 The record, including the hearing on the defendant's motion to suppress, provides an adequate basis for concluding that the defendant's statement was voluntary. Commonwealth v. Monroe, supra, is distinguishable. In that case, officers continuously threatened the defendant's ability to maintain contact with his infant daughter and made false claims about his daughter being taken away. 472 Mass. at 469. Here, as previously noted, the judge specifically found "no nefarious intent" on the part of the officers, and there is nothing in the record to support a conclusion that the officers intentionally handcuffed Jones in the view of the defendant. In addition, the jury in this case was instructed according to our "humane practice" and were told that before considering the defendant's statement they must first determine 

 Page 269 

whether the defendant made the statement and, second, whether the statement was made voluntarily.

 Given these circumstances, there is no basis upon which we can conclude that the denial of the motion to suppress and subsequent admission of the statement at trial resulted in a substantial risk of a miscarriage of justice.

 c. Jury selection. During the course of empanelling the jury, the judge excused prospective juror no. 2, an African-American woman, for cause upon a finding of hardship. Juror no. 2 responded affirmatively when the judge asked the venire whether there was any "other reason" why they could not sit as a juror on the trial. [Note 8] During the ensuing voir dire at sidebar, juror no. 2 disclosed that she had a previously scheduled medical appointment for a follow-up mammogram after the discovery of a lump in her breast. She also explained that she had waited weeks to schedule the exam and was apprehensive about the situation. In excusing juror no. 2, the judge stated: "Under the circumstances, I'd be inclined to release her. But -- unless -- if you want to put anything in the record, or talk to your client, or do whatever you need to do --." There was no objection; however, defense counsel noted that his client had observed that "[juror no. 2] is one of the few African Americans on, on the jury venire." The judge, who did not appear to agree with that observation, further explained his reasoning as follows: 

"Well, I dispute a few on the venire. Okay? But beyond, I, I agree that [juror no. 2] appears to identify as African American. I also find that she has a legitimate medical concern. The Court's concern is that she would be more focused on missing an important medical obligation then being -- not to -- entirely able to focus on the issues in this case. And for that reason, I'm going to exclude her for cause."

 For the first time on appeal, the defendant, who is Black, argues that he was deprived of his right to be tried by a jury representing a fair cross-section of the community because juror no. 2 was one of the few Black persons in the venire. He further claims that the judge abused his discretion when he dismissed juror no. 2, because that dismissal resulted in a "lack of African Americans 

 Page 270 

on the jury."

 There is no question that the defendant has the constitutional right to be tried by a fairly drawn jury of his peers. Commonwealth v. Fernandes, 487 Mass. 770, 774-775 (2021). He also has the right, as he contends, to a jury drawn from a venire representing a fair cross-section of the community. See Commonwealth v. Alves, 96 Mass. App. Ct. 540, 547 (2019). In order to prevail on his claim, the defendant must demonstrate that "(1) the group allegedly discriminated against is a 'distinct group' in the community, (2) that the group is not fairly and reasonably represented in the venires in relation to its proportion of the community, and (3) that underrepresentation is due to systemic exclusion of the group in the jury selection process." Commonwealth v. Arriaga, 438 Mass. 556, 562-563 (2003). It is undisputed that African Americans comprise a "distinctive group," but there is no evidence in the record before us that supports the second and third elements of the defendant's claim. Accordingly, the defendant has not established that he was deprived of his constitutional right to a fairly drawn jury.

 In addition, we are not persuaded that the judge abused his discretion when he excused prospective juror no. 2 for cause. Here, in excusing the prospective juror, the judge properly was concerned that she would not be able to sufficiently focus on the case. [Note 9] See Commonwealth v. Gordon, 422 Mass. 816, 821-822 (1996) (no abuse of discretion in excusing one of two Black persons in venire where prospective juror told the judge that her stress and high blood pressure presented hardship).

 Lastly, the record as currently developed is devoid of any information regarding the racial background of the jurors who were seated and ultimately convicted the defendant. As a result, there is no basis for us to evaluate the defendant's claim that the removal of juror no. 2 from the venire resulted in the absence of African-Americans on the jury. It may very well be that no persons of color served on the jury, but there is nothing in the record to support the defendant's assertion.

 d. Admission of prior bad act evidence. In response to questions posed to him by defense counsel, the defendant testified that 

 Page 271 

he did not have a license on the day he was arrested. Later, during cross-examination, the prosecutor asked the defendant: "You do not have a license, is that correct?" Defense counsel objected; the judge overruled the objection, and the defendant repeated that he "was driving without a license." The defendant contends that evidence of his driving without a license was inadmissible prior bad act evidence and resulted in prejudicial error.

 It is well settled that evidence of a defendant's prior bad acts "is inadmissible for the purpose of demonstrating the defendant's bad character or propensity to commit the crimes charged." See Commonwealth v. Crayton, 470 Mass. 228, 249 (2014), and cases cited. Such evidence may be admissible for some other purpose, for example, "to establish motive, opportunity, intent, preparation, plan, knowledge, identity, or pattern of operation" (citation omitted). Id. However, none of those purposes is implicated here. We therefore agree with the defendant that the evidence in question was inadmissible. Nonetheless, we discern no risk of unfair prejudice, where, as here, the defendant testified on direct examination that he did not have a valid license on the day he was arrested. In sum, the evidence solicited by the prosecutor was merely cumulative of the evidence presented by the defense, and consequently, there was no prejudice. See Commonwealth v. Braley, 449 Mass. 316, 326 (2007) (admission of impermissible hearsay was cumulative of other evidence and did not constitute prejudicial error).

 e. The prosecutor's closing argument. During his closing remarks to the jury, the prosecutor argued that the police witnesses should be believed because they had no stake in the case and were "just doing their job" when they testified. He said:

They're telling the truth. . . . Again, the Defendant has had three years to think about this case. Almost three years. To think about what he's going to say today. Defense attorney is correct, this another [sic] case for the officers. They have no interest in this case -- no outcome -- whatever happens here today makes no bearing on those officers' life. They were just doing their job. That's why they were here to testify.

As the Commonwealth appropriately concedes, the argument vouching for the truthfulness of the police officers was improper. Defense counsel lodged a timely objection, after which the judge, who agreed that the prosecutor transgressed the boundary of proper argument, instructed the jury as follows:

 Page 272 

"Ladies and gentlemen, during [the prosecutor's] closing argument he said, 'They are telling the truth,' in reference to police testimony. I'm here to tell you that, that -- that's improper argument to you. You are the judges of the facts in this case. You're going to decide who to believe and what to believe and why to believe it. The closing arguments are merely intended to help you do that. But to stand there as an Assistant District Attorney and, and somehow tell you -- make a direct statement as to the truthfulness of witnesses is improper. It is fair for an attorney to argue to you that shouldn't believe them, but you shouldn't draw any -- [the prosecutor] has no added, or less credibility than any other lawyer. And lawyers can't tell you what to believe, or who to believe, or why to believe it. Okay?"

 Because defense counsel did not object to the curative instruction, our review is limited to whether the error created a substantial risk of miscarriage of justice. See Commonwealth v. Cooper, 100 Mass. App. Ct. 345, 354 (2021). In this case, the judge's prompt and forceful instruction to disregard the improper argument adequately mitigated any risk of a miscarriage of justice. Thus, while we do not condone improper vouching of a witness, we conclude that the comments at issue do not warrant a reversal of the defendant's conviction.

 2. Denial of defendant's motion for a new trial. Less than two weeks after the defendant's trial concluded, Officer Moynahan was found liable for false arrest and false imprisonment by a jury in the United States District Court for the District of Massachusetts in Springfield. [Note 10] When the defendant learned of the lawsuit and verdict, he filed a motion for a new trial, claiming that the existence of the lawsuit and the allegations of misconduct against Moynahan set forth in the complaint constituted exculpatory evidence that the Commonwealth was required to disclose under Brady v. Maryland, 373 U.S. 83 (1963). [Note 11]

 Page 273 

 The judge denied the motion following a nonevidentiary hearing. The judge found that "no prosecutor actually knew about [the pending lawsuit against Moynahan]" and went on to conclude that the prosecutor had no duty to inquire about actual or alleged misconduct by its police witnesses where, as here, the defendant had not made a specific request for such evidence. The judge then applied the standard of prejudice used to assess the impact of newly discovered evidence, as prescribed by Commonwealth v. Sullivan, 478 Mass. 369, 382 (2017), and determined that there was no prejudice where evidence of the lawsuit amounted to impeachment evidence that would have little or no impact on the jury deliberations because Moynahan's testimony "was duplicated by, and less essential than, the untainted testimony of Phillips." [Note 12]

 The judge also concluded that there was no prejudice because the evidence was inadmissible. He noted that the misconduct on which the lawsuit was based was unrelated to the defendant's case, had occurred almost two years before the defendant's arrest (and five years before the defendant's trial), and was not sufficiently probative of bias against the defendant or of the manner in which Moynahan conducts investigations. Consequently, the judge concluded that even if the evidence had been disclosed, he would not have permitted defense counsel to cross examine Moynahan about the lawsuit. [Note 13]

 "[W]e review the denial of a motion for a new trial for 'a significant error of law or other abuse of discretion.'" Commonwealth v. Duart, 477 Mass. 630, 634 (2017), cert. denied, 138 S. Ct. 1561 (2018), quoting Commonwealth v. Forte, 469 Mass. 469, 488 (2014). Where, as here, "the motion judge was also the 

 Page 274 

trial judge, [his] rulings are 'afforded special deference.'" Commonwealth v. Gaudette, 56 Mass. App. Ct. 494, 503 (2002), quoting Commonwealth v. Hung Tan Vo, 427 Mass. 464, 467 (1998). "If the new trial claim is constitutionally based, this court will exercise its own judgment on the ultimate . . . legal conclusions." Commonwealth v. Rodriguez-Nieves, 487 Mass. 171, 176 (2021), quoting Commonwealth v. Tucceri, 412 Mass. 401, 409 (1992).

 The defendant contends that the judge erred in denying his motion for a new trial because the evidence of the lawsuit against Moynahan was exculpatory and he was prejudiced by his inability to use the allegations of misconduct contained therein to demonstrate Moynahan's bias. "To obtain a new trial on the basis of nondisclosed exculpatory evidence, a defendant must establish (1) that 'the evidence [was] in the possession, custody, or control of the prosecutor or a person subject to the prosecutor's control'; (2) 'that the evidence is exculpatory'; and (3) 'prejudice.'" Sullivan, 478 Mass. at 380, quoting Commonwealth v. Murray, 461 Mass. 10, 19, 21 (2011). See Commonwealth v. Pope, 489 Mass. 790, 798 (2022).

 To begin with, we agree, as the defendant claims, that the evidence is exculpatory. The Commonwealth does not argue otherwise. [Note 14] We now turn to the question whether the evidence was in the Commonwealth's possession such that the prosecutor was required to disclose it.

 It is not contested that, despite local publicity, the prosecutor had no actual knowledge of the lawsuit. At the same time, it is undisputed that Moynahan was fully aware of it and that Moynahan was a member of the prosecution team. "It is well established that the Commonwealth has a duty to learn of and disclose to a defendant any exculpatory evidence that is 'held by agents of the prosecution team.'" Commonwealth v. Ware, 471 Mass. 85, 95 (2015), quoting Commonwealth v. Beal, 429 Mass. 530, 532 (1999). "This 'duty to inquire,' Commonwealth v. Martin, 427 Mass. 816, 823 (1998), is essential to the performance of a prosecutor's discovery obligations." Commonwealth v. Diaz, 100 Mass. App. Ct. 588, 593 (2022). Notwithstanding this obligation, the Commonwealth argues that it was not required to make an 

 Page 275 

inquiry because there was no specific request for information regarding police misconduct. This argument fails for two reasons.

 First, the Commonwealth's argument is inconsistent with the prosecutor's constitutional obligation to disclose "material, exculpatory evidence for which the defendant has made only general requests or even no request." Sullivan, 478 Mass. at 380. It is also at odds with the prosecutor's broad duty under Mass. R. Crim. P. 14 (a) (1) (A) (iii), as amended, 444 Mass. 1501 (2005), to disclose "[a]ny facts of an exculpatory nature." See Matter of a Grand Jury Investigation, 485 Mass. 641, 649 (2020). That obligation incudes the disclosure of impeachment evidence, which often will not be known to the prosecutor absent an inquiry of its witnesses. "'Reasonableness' is the only limitation on the prosecutor's duty of inquiry." Commonwealth v. Frith, 458 Mass. 434, 440-441 (2010), quoting Mass. R. Crim. P. 14 (a) (3), as appearing in 442 Mass. 1518 (2004). See Diaz, 100 Mass. App. Ct. at 593. Here, as in most cases, it would have been reasonable for the prosecutor to ask its police witnesses for information (known or not known to the public) about any pending or proven allegation of misconduct. [Note 15], [Note 16]

 Second, because prosecutors have regular access to their police witnesses, it makes practical sense to place the burden on them to ascertain whether any police witnesses are the subject of disciplinary proceedings or a lawsuit that alleges misconduct in the course of the officer's official duties. In addition, such information may be relevant to other investigations in which the officer has participated and in which the prosecutor has been or may be 

 Page 276 

involved. [Note 17]

 We now turn to the question whether the nondisclosure of the evidence was so prejudicial as to warrant a new trial. The motion judge correctly concluded that, because the defendant had not made a specific request for information concerning allegations of misconduct by police witnesses, the standard of reviewing prejudice was the same standard used to assess the impact of newly discovered evidence. See Sullivan, 478 Mass. at 382. Thus, the defendant must establish that "there is a substantial risk that the jury would have reached a different conclusion if the evidence had been admitted at trial." Id., quoting Murray, 461 Mass. at 21. "If the nondisclosed evidence, 'in an overall assessment, . . . does not carry a measure of strength in support of the defendant, the failure to disclose that evidence does not warrant the granting of a new trial." Sullivan, supra, quoting Tucceri, 412 Mass. at 414. See Matter of a Grand Jury Investigation, 485 Mass. at 649 (under our Declaration of Rights, "[w]here there was no request for the information, or only a general request was made, a new trial would be required only if the undisclosed evidence created a reasonable doubt which did not otherwise exist" [quotations and citations omitted]).

 We conclude that the nondisclosure of the Federal lawsuit 

 Page 277 

against Moynahan did not rise to the requisite level of prejudice because the defendant has failed to show that that there was a substantial risk that the jury would have reached a different conclusion if the evidence had been admitted. [Note 18]

 In general, impeachment evidence is not the basis for a new trial. See Commonwealth v. Lo, 428 Mass. 45, 53 (1998), quoting Commonwealth v. Ramirez, 416 Mass. 41, 47 (1993) ("newly discovered evidence that tends merely to impeach the credibility of a witness will not ordinarily be the basis of a new trial"). Although Moynahan's involvement in the investigation was significant, we agree with the assessment of the motion judge that Moynahan's testimony was consistent with and essentially duplicated the testimony provided by Phillips. Accordingly, a new trial is not warranted.

 Judgment affirmed.

 Order denying motion for a new trial affirmed.

FOOTNOTES
[Note 1] Justice Kinder participated in the deliberation on this case prior to his retirement. 

[Note 2] A nolle prosequi was entered prior to trial on charges of operation of a motor vehicle with license revoked as a habitual traffic offender, operation of an uninsured and unregistered motor vehicle, and misuse of a license plate to conceal the identity of a motor vehicle, and on various motor vehicle infractions stemming from the same incident. 

[Note 3] At the time of trial, Phillips was employed as a Massachusetts State Trooper. 

[Note 4] There was conflicting testimony regarding the number of children in the back seat. The defendant and Jones testified that there were two children, their six month old daughter and Jones's five year old son. Phillips and Moynahan testified that there was one child, a toddler, in the car. Nothing turns on this discrepancy. 

[Note 5] The defendant also argued that the statement should be suppressed because he was subject to a warrantless seizure and subsequent search of his motor vehicle that was unsupported by reasonable suspicion, probable cause, or exigent circumstances. 

[Note 6] Phillips's testimony at the hearing on the defendant's motion to suppress did not deviate in any substantial way from the testimony he provided at trial, which we have already summarized. The judge's findings of fact are consistent with that summary, and therefore we do not repeat those findings here. 

[Note 7] In fact, in his memorandum and order denying the defendant's motion to suppress, the judge explicitly noted that "[t]he defendant did not directly litigate the issue of voluntariness of the statement." 

[Note 8] The judge asked: "Is there any other reason, for example, personal concerns, difficulty with English, physical or medical concerns or limitations, religious beliefs or ethical beliefs, or personal or family obligations, which might make it difficult for you to serve as a juror in this case?" 

[Note 9] We note that, contrary to the defendant's claim, other prospective jurors, namely juror nos. 12 and 16, were excused for hardship. Juror no. 12 was the director of social services at a nursing home and stated that he would not be able to focus. Juror no. 16 had recently lost her father and likewise stated that she would struggle to focus. 

[Note 10] The lawsuit was brought by Daniel Bradley, who was arrested by Moynahan and two other officers in Springfield on August 26, 2015. The complaint alleged counts of unlawful seizure and arrest, false imprisonment, false arrest, excessive force, assault and battery, malicious prosecution, abuse of process, and intentional infliction of emotional distress. According to a news article attached as an exhibit to the defendant's mostion for a new trial, the jury awarded $45,000 in damages against Moynahan. 

[Note 11] The defendant also contended that trial counsel provided him with ineffective assistance in two respects: first, by failing to submit a memorandum of law in support of one of his two motions to suppress and, second, for not requesting a jury instruction under Commonwealth v. Bowden, 379 Mass. 472 (1980), to support his claim that the failure to conduct forensic testing on the firearm rendered the investigation inadequate. The judge rejected both claims. On appeal, the defendant does not challenge the denial of his new trial motion on this ground. 

[Note 12] To the extent the judge relied on defense counsel's lack of diligence in discovering the lawsuit on his own, this was error. The prejudice test set forth in Sullivan, 478 Mass. at 382, contains no such requirement. 

[Note 13] The judge reasoned: "the proposed cross examination of Moynahan on the issue of an accusation of physical misconduct and/or seizure and arrest unsupported by reasonable suspicion or probable cause of a suspect nearly two years prior, and totally unrelated to the defendant or his case, [was] not sufficiently material to the issue of Moynahan's bias or prejudice against the defendant, and not sufficiently probative of how he conducts police investigations." 

[Note 14] The Commonwealth acknowledges that this evidence falls under the scope of Brady, 373 U.S. 83, and that it would have disclosed the evidence had it known about it. 

[Note 15] That said, we do not intend to imply that a prosecutor has an obligation to investigate the background of all its witnesses. See Commonwealth v. Smith, 90 Mass. App. Ct. 261, 268 (2016), quoting Commonwealth v. Campbell, 378 Mass. 680, 702 (1979) ("[A] prosecutor has no duty to investigate every possible source of exculpatory information on behalf of the defendant[] and . . . his obligation to disclose exculpatory information is limited to that in the possession of the prosecutor or police"). 

[Note 16] At the same time, we see no reason why defense counsel as a matter of course would not propound a discovery request along the following lines: "For any law enforcement witness the Commonwealth intends to call as a witness at trial, or any member of the law enforcement team who was involved in the investigation of the crimes charged, please produce any and all information concerning whether that person is the subject of any charge (external or internal, informal or formal, criminal or civil) of misconduct relating to his or her professional duties." 

[Note 17] We take the opportunity to note that the absence of a policy whereby prosecutors in the office of the district attorney for the Hampden district obtain potential impeachment information from police departments regarding officers who may be witnesses in the cases they prosecute resulted in a disservice to the prosecutor, who went to trial in this case with no knowledge of the lawsuit. The desirability of such a policy was addressed by the former Chief Justice of the Supreme Judicial Court in the case of Matter of a Grand Jury Investigation, 485 Mass. 641. In that decision, which was issued a few months after the trial in this case concluded, the court discussed with approval the so-called "Giglio Policy" implemented by the United States Department of Justice. Id. at 658-660. The policy governs the discovery and disclosure of potential exculpatory impeachment information regarding law enforcement witnesses. Id. Other States have similar policies, and as the court noted (at that time) "three of the eleven district attorneys in Massachusetts [Suffolk, Norfolk, and Middlesex] maintain some form of a list of police officers who were 'flagged by prosecutors as either having engaged in or been accused of misconduct that the [district attorney's] office might legally need to disclose' to defense counsel because the information is relevant to the credibility of the officers." Id. at 660 n.16. We suggest that the Supreme Judicial Court may wish to request its Standing Advisory Committee on the Rules of Criminal Procedure to consider whether to amend rule 14 (a) to require production of any charge of misconduct by a member of law enforcement who was involved in the investigation of the crimes charged or who is a prospective witness. 

[Note 18] It bears noting that we do not necessarily agree with the judge's reasoning that evidence of the lawsuit would not have been admissible as impeachment evidence. It is well established that "in the absence of a conviction, '[i]n general, specific instances of misconduct showing the witness to be untruthful are not admissible for the purpose of attacking or supporting the witnesses' credibility.'" Matter of a Grand Jury Investigation, $no$485 Mass. at 651, quoting Mass. G. Evid. § 608 (b) (2020). However, "[a] judge has the discretion to decide whether the credibility of a police officer is a critical issue at trial and whether the officer's prior [misconduct] in a separate matter might have a significant impact on the result of the trial, such that the prior misconduct should be admitted in the interests of justice." Matter of Grand Jury Investigation, supra at 651-652. "[I]n deciding whether to allow a police officer witness in the interest of justice to be impeached with prior misconduct, [a judge] may consider the age of the prior misconduct, the strength of the evidence of the prior misconduct and the simplicity of establishing it, and whether the prior misconduct is probative of how the officer conducts police investigations." Id. at 652. Here, the judge opined that he would have barred the use of the evidence. We cannot say that barring the evidence would have been an abuse of discretion. At the same time, we cannot say it would have been an abuse of discretion to have admitted the evidence. 

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.