NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-872

COMMONWEALTH

vs.

NICCO-KAWON PLEDGER.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

A Superior Court jury convicted the defendant of murder in the second degree, armed assault with intent to murder, assault and battery by means of a dangerous weapon, carrying a firearm without a license, and carrying a loaded firearm without a license.[1] The defendant filed a motion for a new trial on the ground of ineffective assistance of counsel, which the trial judge denied. Before us is the defendant's consolidated appeal from his convictions and the denial of his new trial motion. He argues that his trial counsel was ineffective, largely for failing to challenge the admission of certain cell site location information (CSLI) evidence; that the judge erred by allowing

_____

[1] The jury also convicted the defendant of possession of ammunition without a firearm identification card, but that judgment was dismissed at the Commonwealth's request.

the prosecutor to use peremptory challenges to exclude two Black jurors; that the juror compensation statute is unconstitutional; and that the judge should have sua sponte ordered a special award of compensation to Black jurors who were dismissed because of financial hardship.  We are unpersuaded by these arguments and thus affirm the judgments of conviction of murder in the second degree, armed assault with intent to murder, and assault and battery by means of a dangerous weapon.  We vacate the firearms convictions pursuant to Commonwealth v. Guardado, 491 Mass. 666 (Guardado I), S.C., 493 Mass. 1 (2023) (Guardado II).

Background.  At about 3 A.M. on March 21, 2016, Allex Bryant was shot and killed after leaving a party on Humboldt Avenue in Roxbury.  A second victim, Daquon Brown, was shot in the leg.

Several hours earlier, at about 11:30 P.M., the defendant arrived at the party after his half-sister, Aneka Smith, called him twice at the request of another partygoer, Tyquan Neal.  The defendant left after only fifteen minutes, and Bryant and Brown arrived together about ninety minutes later.  After they arrived, Smith called the defendant a third time at Neal's request, but the defendant was not seen at the party again.

When the party ended at about 2:50 A.M., Bryant and Brown left for Brown's car, which was parked near the corner of Humboldt Avenue and Munroe Street.  Soon thereafter, multiple

2

witnesses heard gunshots, and some saw parts of the shooting. The host of the party heard gunfire involving "more than one person." A neighbor saw two men shooting at each other and then saw one of them throw something into a parked car before jumping into a dark sedan that sped off in the wrong direction on Munroe Street. Another neighbor noticed that the car leaving the scene was a black Nissan with tinted windows.

Police responded soon after the shooting and found Bryant unresponsive in the passenger seat of Brown's car. On Munroe Street they recovered numerous shell casings, a firearm on the sidewalk, and a magazine cartridge underneath a parked Toyota Camry. After obtaining a search warrant, the police recovered another firearm from the floor of the Camry. The Camry was registered to the defendant's brother, Dartanyan Pledger.

Once they learned that the defendant had attended the party, police acquired the cell phone records for a number (2364 number) that they believed belonged to him. They later discovered that the number was registered to the defendant's girlfriend, Lisa Lewis, who owned a 2006 black Nissan Maxima with tinted windows. The records for the 2364 number showed that its user had regular contact with another number registered

3

to Lewis and a number registered to Dartanyan[2] from 2:06 A.M. to 3:10 A.M. on the day of the shooting.

The police sent the records for all three numbers to Zetx, a company founded by Sy Ray, for CSLI mapping. Using software that he developed, Ray produced maps with shaded areas, described as "handoff areas," around the cell phone towers used by the phones before and after the shooting. According to Ray, who testified as the Commonwealth's CSLI expert, the handoff areas showed that the user of the 2364 number was in the area of Munroe Street at about midnight; traveled to downtown Boston, near Lewis's workplace, at about 2:25 A.M.; returned to the Munroe Street area at about 2:45 A.M.; and remained there until after the shooting. Ray acknowledged that the handoff areas did not pinpoint a phone's exact location but represented only a "rough estimation" of where the phone was when it connected to a tower.

Discussion. 1. Ineffective assistance of counsel. In his motion for a new trial, the defendant argued that his trial counsel was ineffective for not moving to exclude Ray's testimony as unreliable under the Daubert-Lanigan test[3] or offering a rebuttal expert. The defendant also argued that

_____

[2] Because Dartanyan has the same surname as the defendant, we use his first name to avoid confusion.
[3] See Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 589 (1993); Commonwealth v. Lanigan, 419 Mass. 15, 24 (1994).

4

counsel should have raised a hearsay objection to a detective's testimony. The judge denied the motion without an evidentiary hearing.

To establish ineffective assistance, a defendant must show "serious incompetency, inefficiency, or inattention of counsel" that likely deprived the defendant "of an otherwise available, substantial ground of defense." Commonwealth v. Daley, 439 Mass. 558, 569 n.8 (2003), quoting Commonwealth v. Saferian, 366 Mass. 89, 96 (1974). Where, as here, a claim of ineffective assistance is based on a strategic decision by counsel, the question is whether the decision was manifestly unreasonable when made. Commonwealth v. Kolenovic, 471 Mass. 664, 674 (2015). We review the judge's decision for an abuse of discretion, according "special deference" to her factual findings and ultimate conclusions, as she was also the judge at trial. Id. at 672-673, quoting Commonwealth v. Lane, 462 Mass. 591, 597 (2012).

The judge properly determined that trial counsel's decision not to challenge Ray's expert testimony or call a rebuttal witness was not manifestly unreasonable. Counsel averred in an affidavit that he researched the issue[4] and determined that such

_____

[4] Specifically, counsel averred that he "consulted with other counsel as well [as] individuals with professional training relative to CSLI and cell tower capabilities," "reviewed various

5

a challenge would either be unsuccessful or result in a different expert testifying who would be less favorable to the defense. Among other factors, counsel considered that Ray had a "limited educational background," that his company had an "obvious pro-law enforcement slant," and that his methods departed from those typically used in CSLI mapping.[5] In addition, counsel looked into other cases in which the Commonwealth had introduced CSLI evidence through law enforcement experts. Given that the CSLI evidence in those cases "was essentially the same" as "the information imparted [by Ray]," and given counsel's "past experiences with the level of education, training, experience and demeanor of law enforcement experts," counsel concluded that his chances of discrediting the CSLI evidence would be greater if Ray testified as the Commonwealth's expert. This strategic decision, as the judge found, was "eminently reasonable."

The judge also properly concluded that counsel's decision did not deprive the defendant of a substantial ground of

_____

published materials relative [to] the function of cell towers to explore the nature of the anticipated testimony," and "conducted research regarding Sy Ray and Zetx, including, but not limited to, some of the cases in which he testified as an expert." Counsel then learned that Ray had "been previously admitted as an expert in a number of [c]ourts."

[5] Counsel was aware that "the form of [CSLI] evidence" is traditionally in the "cone/pie wedge shape rather than Zetx mapping."

defense.  The defendant's motion and supporting affidavit and report from Joseph Nicholls, a digital forensic examiner, failed to show that materially different evidence would have come in had another expert testified for the Commonwealth or had a rebuttal expert testified.  Nicholls's affidavit and report did not rebut the crux of Ray's testimony, which was that the 2364 number used cell phone towers near Munroe Street at the time of the shooting.  As the judge found, a different expert applying traditional methods would "still have to acknowledge that the CSLI put the phone within a certain coverage area and, in a densely populated city such as Boston, that coverage area is relatively small."  See Commonwealth v. Perry, 489 Mass. 436, 439-440 (2022).  Thus, because the motion did not demonstrate that "better work might have accomplished something material for the defense," the judge did not abuse her discretion by concluding that the defendant failed to establish prejudice. Commonwealth v. Satterfield, 373 Mass. 109, 115 (1977).

Nor did the judge abuse her discretion by rejecting the defendant's claim that counsel was ineffective for not raising a hearsay objection.  Underlying this claim is a detective's affirmative response ("I was") to the question:  "As part of your investigation, were you able to obtain a potential phone

7

number that might belong to [the defendant]?"[6]  The defendant

does not explain why the detective's response constituted

hearsay.  It did not recount an out-of-court statement, see

Mass. G. Evid. § 801(c) (2023), and so counsel was not

ineffective for failing to object to it.  See Commonwealth v.

Kruah, 47 Mass. App. Ct. 341, 344-345 (1999).  The absence of

objection also did not deprive the defendant of a substantial

ground of defense, given that the detective immediately went on

to testify that the 2364 number was in fact registered to Lewis.

2.  Peremptory challenges.  We turn to the arguments the

defendant raises on direct appeal, beginning first with his

claim that the judge should have denied the Commonwealth's

peremptory challenges to two Black jurors.  While peremptory

challenges are presumed to be proper, that presumption can be

rebutted if "the totality of the relevant facts gives rise to an

inference of discriminatory purpose."  Commonwealth v. Mason,

485 Mass. 520, 529 (2020), quoting Commonwealth v. Sanchez, 485

Mass. 491, 511 (2020).  If the defendant makes this showing, the

burden shifts to the Commonwealth to state a nondiscriminatory

reason for the challenge.  See Mason, supra at 530.

The Commonwealth used peremptory challenges on jurors nos.

101 and 69, both Black women, after discussions about their

---

[6] Contrary to the defendant's characterization, the detective did
not testify that he "learned" of the potential phone number.

8

criminal histories. Juror no. 101 disclosed that she had previously been charged with a crime and stood trial "[i]n front of a judge." In challenging her, the prosecutor stated that he did not want "someone who's actually been to trial as a criminal defendant sitting on [the] jury." Juror no. 69 disclosed that she and her son were prosecuted for drug crimes by the same district attorney's office involved in this case, that she had served one year of incarceration, and that she believed she was "made an example of" for other parents. The prosecutor challenged her because of concerns that she had some "residual feelings" about his office. The judge permitted both challenges over the defendant's objections, finding no pattern of discrimination and that the reasons given by the Commonwealth were not pretext.

On appeal the defendant argues to the contrary that the Commonwealth's reasons were "demonstrably pretextual" in light of the fact that it did not challenge four other jurors with criminal histories. But the record does not reveal the racial identities of the four unchallenged jurors, and so we have no factual basis on which to conclude that the Commonwealth acted with discriminatory purpose. See Commonwealth v. Grier, 490 Mass. 455, 461-462 (2022). For this reason alone, the defendant has failed to show that the judge erred by finding an absence of pretext. Furthermore, the judge had a sound basis for her

9

rulings, as the struck jurors' "significant experiences with the law provided . . . sufficient and obvious bas[es] for the prosecutor's peremptory challenge[s]." Commonwealth v. Lopes, 478 Mass. 593, 601 (2018). By comparison none of the four unchallenged jurors disclosed being charged with any crimes that resulted in a trial or a committed sentence.[7] The Commonwealth was also warranted in striking juror no. 69 for the independent reason that she and her son had been prosecuted by the district attorney's office involved in this case and "could harbor resentment against the office." Commonwealth v. Walker, 69 Mass. App. Ct. 137, 143 (2007). See Commonwealth v. Scott, 98 Mass. App. Ct. 843, 848 (2020). Thus, on the record before us, we discern no abuse of discretion in the judge's allowance of the challenges.

3. Juror compensation statute. The defendant claims that the juror compensation statute, G. L. c. 234A, § 51, is unconstitutional on its face and as applied because it resulted in the dismissal of four otherwise qualified Black jurors, violating his right to a jury drawn from a fair cross section of the community. According to the defendant, because the statute

---

[7] The unchallenged jurors disclosed previous arrests -- at least two of which occurred in other jurisdictions -- for possession of a class B substance, "attaching plates," and operating under the influence. It is unclear from the record which, if any, of these arrests led to trials or convictions.

10

provides for payment of less than minimum wage, it has a disparate impact on Black jurors and other people of color. The defendant provides no record support for this assertion. The record does not reveal what percentage of the jurors excused for financial hardship were Black[8] and is devoid of information regarding the racial composition of the venire or the seated jury. We therefore have no basis on which to evaluate the defendant's claim. See Commonwealth v. Mcfarlane, 102 Mass. App. Ct. 264, 270 (2023), S.C. 493 Mass. 385 (2024).

4. Special compensation. Likewise, we cannot evaluate the defendant's claim that the judge erred by failing to sua sponte order awards of special compensation under G. L. c. 234A, § 56, to the Black jurors excused for financial hardship. There is no information in this record to support the defendant's suggestion that the special awards were necessary to ensure a proportionate number of Black people on the jury. His claim fails for at least this reason.

5. Firearms convictions. As the parties agree, and we have confirmed, the Commonwealth presented no evidence on the defendant's licensure status as required by Guardado I, 491 Mass. at 668. The convictions of carrying a firearm without a

---

[8] Almost twenty jurors were excused for financial hardship, including the four Black jurors and three white jurors. The racial backgrounds of the remaining jurors are not apparent from the record.

11

license and carrying a loaded firearm without a license must therefore be vacated.  The Commonwealth is free to retry the defendant on those charges.  See Guardado II, 493 Mass. at 12.

Conclusion.  The judgments of conviction of carrying a firearm without a license and carrying a loaded firearm without a license are vacated.  The remaining judgments and the order denying the defendant's motion for a new trial are affirmed.

So ordered.

By the Court (Desmond, Shin & Singh, JJ.[9]),

Assistant Clerk

Entered: March 18, 2024.

---

[9] The panelists are listed in order of seniority.